**UNITED STATES of America,
Appellee,**

v.

**Anthony ACARINO, Appellant.**

**No. 125, Docket 32421.**

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1969.

Decided March 18, 1969.

Certiorari Denied June 16, 1969.
See 89 S.Ct. 2101.

evidence, and that the trial judge erroneously instructed the jury on the meaning of reasonable doubt. We will consider these claims in turn.

### I. *Probable cause for the arrest*

According to testimony before Judge Mishler: In July 1965, appellant, then known to federal narcotics agents as "Babe," was placed under surveillance after the agents received information that a white man of Italian extraction called "Babe" was selling heroin to various narcotics peddlers in Brooklyn. During the following months, appellant was seen meeting a known drug peddler on the street, receiving a sum of money from him, and frequenting various bars and grills known to be used by narcotics traffickers. On October 21, 1965, he was observed transferring the license plates from his Cadillac convertible to a Lincoln convertible. On the following evening, at about 8:15 P.M., while maintaining surveillance of appellant, agent Telb received a telephone call from a previously reliable informant. The informer told Telb that appellant was to make a delivery of heroin around 9 P.M. that night to a Negro male known as Henry C., a suspected narcotics violator, in the Bedford-Stuyvesant area of Brooklyn, and that appellant would have the narcotics in his possession. At about 8:30 P.M., appellant emerged from a building at 2045 84th Street, in Brooklyn, got into the Lincoln and drove off. Telb and three other agents, Hughs, Bishop and Guy, followed. Appellant drove in an evasive fashion, going around several blocks, stopping and starting, and running through two red lights. At the intersection of Bedford Avenue and Avenue J in Brooklyn, when appellant stopped for a red light, the agents cut off his car. The agents saw appellant move his hand towards the partially open window on his side and noticed a small shiny object in his hand. The agents arrested appellant, and agent Bishop searched the rear of the car and

Jerome Lewis, New York City (H. Elliot Wales, New York City, on the brief), for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York, on the brief), for appellee.

Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.*

FEINBERG, Circuit Judge:

Anthony Acarino appeals from a judgment of conviction after a jury trial and from denial of a motion for a new trial by Jacob Mishler, J., in the United States District Court for the Eastern District of New York. Appellant was convicted on one count of concealing heroin in violation of 21 U.S.C. § 174 and one count of purchasing heroin in violation of 26 U.S.C. § 4704(a), and was sentenced to ten years on each count, sentences to run concurrently. In seeking reversal, appellant claims that admission of crucial evidence against him was improper because it was seized after an arrest not based on probable cause, that the prosecutor suppressed material

* Of the Southern District of New York, sitting by designation.

there found a waxed packet containing narcotics.[1]

■ Prior to trial, appellant moved to suppress this evidence. After an evidentiary hearing, Judge Mishler denied the motion on the ground that the agents had probable cause to make the arrest,[2] to which the search was a proper incident. Appellant contends that this ruling was incorrect, relying largely on Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under the principles there formulated, an informer's report alone does not establish probable cause[3] unless the informer conveys enough of the basis of his information to permit an assessment of its validity and unless there are circumstances which manifest the general credibility or reliability of the informant. Appellant's brief in this court concedes that on the basis of the agents' testimony before Judge Mishler, they properly regarded the informer as reliable. Indeed, the informer had furnished information which led to convictions five times before. Therefore, our inquiry is confined to the basis of his statement that appellant was to make a delivery of heroin within the hour to a particular recipient. The information conveyed to the agent here was more specific than that referred to in *Aguilar*, in which the officers' affidavit recited only that they:

> have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.

378 U.S. at 109, 84 S.Ct. at 1511. Cf. United States ex rel. Cunningham v. Follette, 397 F.2d 143, 145 (2d Cir. 1968); United States v. Soyka, 394 F.2d 443, 453 (2d Cir. 1968) (*in banc*). In addition, the informer here, as in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), gave the agent a precise prediction of a crime about to occur, unlike *Spinelli* where the information was a more generalized description of criminal activity.[4] Moreover, agent Telb testified that the informer had said that he "personally knew" that the described delivery was to be made. This emphasis, along with the detailed nature of the information given, suggests that the informer was disclosing firsthand knowledge, rather than a " 'suspicion,' 'belief' or 'mere conclusion,' " *Aguilar*, 378 U.S. at 114, 84 S.Ct. at 1514, or "a casual rumor circulating in the underworld or an accusation based mere-

1. Hughs testified that Bishop said "I found it" or "here is the stuff" and held up something in his hand. Similarly, Telb testified that Bishop said "I found the stuff" and had a shiny package in his hand.

2. Although neither party has mentioned it, apparently the governing statute is 26 U.S.C. § 7607(2), which provides that agents of the Bureau of Narcotics may:
   make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation.
   "Reasonable grounds" means substantially the same as "probable cause." See Drap-

er v. United States, 358 U.S. 307, 310 n. 3, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

3. Both *Aguilar* and *Spinelli* involved the sufficiency of applications to obtain search warrants, but the latter opinion notes, 393 U.S. at 417 n. 5, 89 S.Ct. at 589, "the analysis required for an answer to this question [probable cause for an arrest without a warrant] is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue."

4. The *Spinelli* affidavit alleged that the FBI "has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4–0029 and WYdown 4–0136." 393 U.S. at 414, 89 S.Ct. at 588.

ly on an individual's general reputation," *Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589. Finally, in *Spinelli*, not only was no statement made as to the source of the informer's information but no reason was given for the agent's assertion that the informant was generally reliable, a fact conceded here. Therefore, we do not find impressive the argument that *Aguilar* and *Spinelli* require us to reverse this conviction.

However, as in *Cunningham* and *Soyka*, *supra*, we need not decide whether the informer's report, standing alone, would have constituted probable cause for the arrest. For it is soundly established that an informer's report which itself fails to establish probable cause may be sufficiently corroborated by independent observation of a suspect's conduct, if the latter tends to confirm the information in the report or otherwise to support a conclusion that the suspect is engaged in committing a crime. See, e. g., McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), as construed by *Spinelli*, 393 U.S. at 419 n. 7, 89 S.Ct. at 590; Draper v. United States, *supra*; United States ex rel. Cunningham v. Follette, *supra*; United States v. Soyka, *supra*; United States v. Repetti, 364 F.2d 54 (2d Cir. 1966). In the present case, the credibility of the informer's report was reinforced by appellant's conduct both before and after the informer's urgent telephone call. Before it was received, the agents' observations of appellant receiving money from a known narcotics violator, patronizing establishments known to be frequented by dealers in narcotics, and transferring his license plates less than two days before the purported delivery attempt all supported the inference that appellant was engaged in illegal activities. Immediately after the informer's call, appellant left the building approximately half an hour before the delivery was reportedly scheduled, en-

gaged in evasive driving, and just prior to arrest apparently tried to dispose of a small shiny object in his hand. We hold that the cumulative effect of the agents' past observation, the informer's report, and the consistency of appellant's actions with the report was sufficient to establish probable cause that appellant, when arrested, was engaged in a violation of the narcotics laws.

## II. *Suppression of evidence*

Appellant's second argument is based on his discovery, shortly after conviction, that when agent Bishop testified for the Government he was then under two indictments in the New York Supreme Court for crimes relating to the sale of a stolen car. On the morning that Bishop, then no longer employed by the Government, was to testify, he volunteered to the Assistant United States Attorney that he had been indicted in the state court and that the matter was still pending.[5] The assistant did not communicate this information either to the trial judge or to the defense, presumably on the assumption that it could be of no use to the defense and was thus of no relevance to the proceedings. After learning of Bishop's status, appellant moved for a new trial. Judge Mishler denied the motion in an unpublished opinion.

The prosecuting attorney was correct in his apparent assumption that such evidence of misconduct as an indictment is not normally admissible for impeachment purposes. See United States v. Bowe, 360 F.2d 1, 14–15 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966). Appellant, however, argues that the Government "built up" Bishop's credibility by eliciting the various "positions of trust and responsibility" he had held, a stratagem which the trial judge, had he known of the pending indictments, might not have al-

5. Although the assistant had heard, prior to the trial, that Bishop was in some kind of difficulty regarding the sale of a stolen car, he was apparently unaware of the indictments.

lowed. This "build-up" consisted of six questions,[6] the answers to which indicated that Bishop had been employed by the Federal Bureau of Narcotics for about three years, was thereafter an investigator for the New York Buildings Department, and was presently an insurance adjuster. Appellant contends that the resulting impression of unblemished respectability was particularly unfair because Bishop, the agent who allegedly found the packet of narcotics, was the crucial government witness, and the defense claimed that he had in fact planted the packet.

■■ We do not find this argument persuasive. The brief outline of Bishop's employment background alone could scarcely have had a significant effect on the jury's determination. Moreover, even if the fact that Bishop was under indictment had been introduced, the trial judge found, and we agree, that the result would have been no different.[7] See United States v. Costello, 255 F.2d 876, 879 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958). Finally, we see no merit in appellant's claim that even absent a showing of prejudice, the fact that the prosecution suppressed information as to the indictments was in itself a violation of due process. The conduct of the prosecution here did not involve deliberate falsification, cf Kyle v. United States, 297 F.2d 507, 513–515 (2d Cir. 1961), but, at the worst, faulty judgment. Even assuming that the trial judge might have allowed some use of the indictments against Bishop:

> Failure to appreciate the use to which the defense could place evidence in the prosecution's hands * * * must happen to the most scrupulous prosecutors and * * * the problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence, to the defense would have altered the result. To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties.

United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968). We do not express approval of the decision of the assistant not to inform the court and the defense of his discovery that a key witness was under indictment. This appeal itself emphasizes the proposition that it would have been wiser to disclose such evidence, regardless of the probability that it might be inadmissible. Here, however, where the attorney acted in good faith and the undisclosed evidence had minimal probability of affecting the result of the trial, there is no justification for ordering a new trial. See United States v. Keogh, *supra*. Accordingly, we affirm the decision of the district judge on that motion.

---

6. These questions were as follows:

Q. Mr. Bishop, what is your occupation? A. My occupation, currently, currently I am assigned as an insurance adjuster for an organization called the General Adjustment Bureau.

Q. Where are they located? A. The office I am assigned to is in Pearl River, New York.

Q. Were you ever employed by the Federal Bureau of Narcotics? A. Yes, sir, I was.

Q. During what period of time, approximately. A. Approximately 1963 through the middle of 1966.

Q. When you left the Federal Bureau of Narcotics where did you go? A. From the Bureau of Narcotics I went to the Investigation Section of the Department of Buildings of the City of New York.

Q. After that you went into the insurance business; is that right?

7. Three other agents testified at trial to substantially the same series of events as did Bishop. The trial judge found that the "proof of guilt was overwhelming," and that the testimony of the defendant, who took the stand in his own behalf, was incredible.

III. *Charge on reasonable doubt*

Finally, appellant raises a variety of objections to Judge Mishler's charge on reasonable doubt. Since none was considered sufficiently important to call to the judge's attention at trial, they might be disposed of summarily on that basis. However, appellant claims that their cumulative effect amounted to "plain error" justifying reversal. Accordingly, we will consider them on the merits.

The first complaint is that the judge never told the jury that "a reasonable doubt is a doubt based on reason which arises from the evidence or lack of evidence." The claim is simply unjustified. Judge Mishler instructed the jury that reasonable doubt "is based upon the evidence in the case," and must be based "on the case, the record" rather than on "some emotion" or "sympathy, bias or prejudice." It is true that the judge did not use the exact words appellant now suggests, although he probably would have had the request been timely made. But there is nothing talismanic about appellant's phrasing. The substance of what he now seeks was imparted to the jurors.

■ Appellant's next point is based on the judge's instruction to the jurors that: "You must be convinced to a *moral certainty* as to the guilt of the defendant before you may find him guilty." (Emphasis added.) In United States v. Byrd, 352 F.2d 570, 575 (2d Cir. 1965), we considered an instruction that reasonable doubt "is a doubt to a moral certainty"; we disapproved of it because it tended to create "more confusion than light." However, that type of conjunction of two antithetical terms, "doubt" and "certainty," did not occur here. In United States v. Johnson, 343 F.2d 5, 6 (2d Cir. 1965), we reversed a conviction because the judge told "the jury to convict if it arrive[d] at a

stage where it is morally, convinced of guilt." We felt the instruction was:

altogether too indefinite. It could be taken to mean morally convinced that it was slightly more likely that defendant was guilty than not, and "morally convinced" might mean by some means other than reason.

However, we went on to say that "To be convinced to a 'moral certainty' would have a somewhat different meaning." That, of course, was the expression used by the judge here. While we do not see why the phrase "moral certainty" should continue to be employed at all, see United States v. Hart, 407 F.2d 1087 (2d Cir. 1969), its use here was not plain error.

■ Finally, Judge Mishler stated that: "Proof beyond a reasonable doubt is such as you would be willing to rely on in the most important of your affairs." Appellant argues that the judge should have used the more familiar "hesitate to act" test; e. g., "a reasonable doubt is not a vague, speculative, imaginary doubt but such a doubt as would cause prudent men to hesitate before acting in matters of importance to themselves." United States v. Johnson, *supra*, 343 F.2d at 6. Following the Supreme Court's lead in Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), we have often suggested use of the latter concept, e. g., United States v. Bilotti, 380 F.2d 649, 654 (2d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 300 (1967); United States v. Nuccio, 373 F.2d 168, 174–175 (2d Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967). We do so again, reiterating what we said in *Nuccio*: "the 'hesitate' language makes the point considerably better." 373 F.2d at 175. However, no reversible error, plain or subtle, was committed.

*Judgment affirmed.*