UNITED STATES of America,
Plaintiff-Appellee,

v.

William Maurice FOSTER, Jr. and Terry
Lee McCready, Defendants-
Appellants.

Nos. 72–1224, 72–1225.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1973.

Decided May 23, 1973.

Rehearing Denied in No. 72–1224 June 7,
1973 and in 72–1225 June 12, 1973.

James Edwin Burke, Vincent P. Campiti, South Bend, Ind., for defendants-appellants.

William C. Lee, U. S. Atty., John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., Timothy P. McCarthy, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before STEVENS and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

These two consolidated appeals arise from judgments of conviction entered in the district court for the Northern District of Indiana following a jury trial at which the defendants were found guilty of violating 18 U.S.C. § 2113(a), entering a bank with the intent to commit a felony within the banking institution. The defendants have appealed separately, each filing individual briefs although adopting the arguments raised in each other's briefs. The issues on appeal may be summarized as follows: (1) whether the district court erred in requiring the witness Dennis Mainer to answer questions propounded him by the prosecution; (2) whether the district court erred in denying the defendant Foster's motion to suppress evidence seized incident to Foster's arrest; (3) whether the district court erred in instructing the jury; and (4) whether the district court erred in denying the defendant Foster's motion for judgment of acquittal.

The facts brought out at the hearing on the motion to suppress and at the trial showed that on November 26, 1971, the South Bend Police Department received information from an informant whose reliability had not been previously established that a bank located in the vicinity of Elkhart County, Indiana, was going to be the subject of a robbery. The bank was not identified by name but was said to be located near a gymnasium. The informant told the officer with whom he spoke that the men to be involved in the purported robbery were going to be armed and were going to be wearing wigs and riding in a 1959 white Buick automobile. Of the three men who were to participate in the crime, the informant said that two were Caucasian and one was a Negro. One of the alleged robbers was identified by his full name and the other two by their first names. The informant told the officer that he acquired this information by overhearing a conversation of the three men which purportedly occurred in the informant's home. The robbery was to take place, according to the informant, at about 3 P.M. that afternoon.

The South Bend Police Department then notified the Elkhart Police Department of the informant's call and of the substance of the conversation. Banks in the vicinity of Elkhart County were notified of the potential robbery and un-uniformed police officers were assigned to the various banks. At about 2:45 P.M. in the afternoon, an officer situated outside the Dunlap Branch Bank, which is located in Elkhart County near a gymnasium, observed two suspicious persons approaching the Bank. One was a Negro and one a Caucasian. By walkie-talkie, this officer then informed another officer who was situated inside the Bank of his observation. The two

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

men then entered the Bank. They were wearing large, floppy hats and sun glasses. The two individuals were observed by the officer inside the Bank as they walked around for awhile, one getting into a teller line and then out of the line on two separate occasions. The two individuals appeared to be very nervous and had two brief conversations during the time one of them was getting in and out of the teller lines. During the latter conversation, one of the individuals was looking out of the window and appeared to be focusing his attention on an unmarked police car parked in front of the Bank. The unmarked vehicle had a radio antenna protruding from the trunk and was also equipped with a red-lens spotlight. The officer inside the Bank then heard one of the individuals say something to the effect that some one had "ratted" or "squealed". At this time, the two individuals then hurriedly departed the Bank. After being told by bank employees that they had never seen the two individuals previously, the officer inside the Bank, again by walkie-talkie, informed his partner outside the Bank what had taken place inside.

After the two individuals left the Bank, they were observed by the other officer who stated that they were walking at a very rapid pace. After following the two for a short period of time, the officer stopped them and placed them under arrest. A .32 caliber loaded pistol was recovered during a search of one of the individuals, a Dennis Mainer. Surgical gloves and trash bags were also found. The second officer arrived on the scene to assist in the arrest and upon searching the defendant Foster, uncovered a .25 caliber automatic pistol and ammunition clip. Defendant McCready was arrested at a later date and was found to be in possession of a .32 caliber bullet of an extremely rare nature. A firearms expert testified at the trial that this bullet matched up with a bullet found in the possession of Dennis Mainer.

The government concluded its case with the testimony of Dennis Mainer, who had participated in the incident at the Bank but who was not charged with the defendants Foster and McCready. Mainer had previously entered a plea of guilty to an information filed under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5037. His testimony was that he went to the Bank with the defendant Foster and that the two of them had been transported there by the defendant McCready. He stated that the defendant McCready had made the plans for the two to rob the Bank and that they went to the Bank for that purpose. Mainer further related that the guns which he and Foster had possessed had been supplied by the defendant McCready.

The defendants first contend that the district court erred in requiring the witness Mainer to answer questions propounded him by the prosecution. After giving his name, address and other general responses, the witness stated that he was in the Bank with the defendant Foster on the day in question. The government then asked him how he got to the Bank. Mainer stated, "I don't have to answer any questions like this." Defense counsel objected to further questioning of the witness on the ground that he was asserting his privilege against self-incrimination and on the further ground that his invocation of the privilege while on the stand was prejudicial to the defendants.

It has long been recognized that the privilege against self-incrimination is personal to the witness. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). It is equally clear that no one other than the witness himself has standing to claim or assert the privilege. Bowman v. United States, 350 F.2d 913, 916 (9th Cir. 1965); Village of Brookfield v. Pentis, 101 F.2d 516, 522 (7th Cir. 1939). Thus, the defendants here may not raise the

issue of the district court's ruling on the witness Mainer's assertion of the privilege. Nor are we persuaded by the defendant's claim of prejudice by the witness' mere invocation of the privilege while on the stand. The cases relied upon by the defendants in this regard, as well as this Circuit's case in United States v. Amadio, 215 F.2d 605, 613–614 (7th Cir. 1954), indicate that reversible error occurs only where the government intentionally forces the witness to invoke the privilege with the result that an inference unfavorable to the accused is planted in the minds of the jurors. Here, there is nothing in the record to suggest that the government had advance knowledge, or any reason to anticipate, that the witness was intending to invoke the privilege. The witness had previously pleaded guilty for his involvement in the robbery to an information filed under the Federal Juvenile Delinquency Act. Moreover, no unfavorable inference occurred here which is attributable solely to the assertion of the privilege since the witness was instructed and did continue with his testimony.

▇▇ The defendant Foster's contention that the district court erred in denying his motion to suppress turns on an evaluation of whether the officers had probable cause to make the warrantless arrest and incidental search of the defendant. The standards employed in reviewing a police officer's assessment of probable cause are the same as those employed in reviewing a magistrate's assessment prior to issuing a warrant. Whiteley v. Warden, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). With reference to the principles enunciated in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 27 L.Ed.2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), we observe first that the informant provided the officers with a wealth of detail concerning the circumstances of the purported robbery. The individuals to be involved were described by name, by race and by the dress that was to be employed. The location of the rob-

bery was described in a general fashion and the time of the robbery was given. These details were corroborated in almost every respect by the arresting officers. Moreover, the informant advised the officers of the manner in which he acquired the information concerning the predicted robbery. In this latter respect, this case is stronger than Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) where the Supreme Court upheld a warrantless arrest and subsequent search under circumstances closely resembling those presently before us. We conclude, therefore, that no error occurred in the denial of the defendant Foster's motion to suppress evidence.

▇▇ The defendants next maintain that the district court erred in refusing to instruct the jury that willfulness is an element of the offense under 18 U.S.C. § 2113(a). The argument is without merit since the district court expressly instructed the jury a specific intent was an element of the offense charged and an element on which the government bore the burden of proof. The defendants' contention that the district judge erred in refusing to give their tendered instruction pertaining to circumstantial evidence is also unpersuasive. A circumstantial evidence instruction was given which is identical to the instruction approved by this court in United States v. Atnip, 374 F.2d 720 (7th Cir. 1967).

▇ Lastly, the defendant Foster urges the district court erred in denying his motion for judgment of acquittal. The motion was premised upon the theory that the crime defined in 18 U.S.C. § 2113(a) is essentially an attempted robbery offense and thus requires proof of some overt act. Whether proof of an overt act is required under this section seems not to have been passed upon by any court. We need not decide the question here, however, since assuming *arguendo* that proof of an overt act was required, there is ample evidence in the record to support such a finding. The defendants procured firearms and other

robbery paraphernalia and entered the bank with those items in their possession. It is not denied that the bank was entered with the intent to commit the robbery.

For the reasons stated, the judgments of conviction are affirmed.