UNITED STATES of America,
Appellee,

v.

Charles C. SOLES, Appellant.

No. 978, Docket 73–1399.

United States Court of Appeals,
Second Circuit.

Argued June 20, 1973.

Decided July 6, 1973.

Certiorari Denied Nov. 12, 1973.
See 94 S.Ct. 455.

Phylis Skloot Bamberger, New York City (The Legal Aid Society and Robert Kasanof, New York City, of counsel), for appellant.

John N. Bush, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the S. D. N. Y., and Arthur J. Viviani, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, FEINBERG and MANSFIELD, Circuit Judges.

FRIENDLY, Circuit Judge:

Charles C. Soles was convicted, after trial before Judge Tyler and a jury in the District Court for the Southern District of New York, for two sales of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). He was sentenced to concurrent five year terms of imprisonment and subsequent concurrent three year terms of special parole. The federal sentences were set to run concurrently with sentences aggregating 25 years, which Soles is presently serving in Maryland for possession of cocaine and attempted bribery of two police officers.[1]

The Government's evidence was this: On November 30, 1971, Detective Clyde Isley, acting in an undercover capacity, was introduced to Soles by an informant at a tavern in the Bronx. After an episode in which Soles spoke only through the informant, Isley insisted on direct negotiation with Soles for the purchase of narcotics. Soles assented and invited both men to follow him.

Soles drove off in a 1968 green Pontiac, which New York State records later showed to be his; Isley and the informant followed in a government car. Soles parked the Pontiac in the parking lot at 100 Lane Crest Ave., New Rochelle, N. Y., the address shown for him in the Westchester telephone directory. The trio entered Soles' apartment. Isley said he was interested in purchasing a "piece" of heroin, Soles responded that he had one, and the informant departed. Isley paid Soles $1,100. Soles then went to the kitchen, removed a brown paper bag from a cabinet and carried it into his bedroom. While Soles was there, Isley observed several letters addressed to Charles Soles, 100 Lane Crest Avenue. Soles delivered an ounce of heroin to Isley, the informant returned, and, in response to an inquiry from Isley, Soles

instructed that future contacts should be made through the informant. The three men returned to the parking lot, and Isley and the informant drove off. A surveilling agent, watching the parking lot through binoculars, identified Soles and reported that he then returned to his apartment.[2]

Six days later Isley again met Soles at the tavern and asked to purchase another ounce of heroin. They entered Isley's car and drove to Soles' apartment. Again Soles removed an ounce of heroin from a brown paper bag, diluted it, and sold it to Isley for $1,100. Before they departed, Soles gave Isley a phone number to call if he wished to make further purchases. The Westchester telephone directory listed this under Soles' name. Soles and Isley then returned to the car and Isley drove Soles back to the tavern. The surveilling agent watched the two drive off and again identified Soles as the man accompanying Isley.

The only point of any significance scored in cross-examination was that Isley's reports described Soles as 5'10" in height whereas in fact he was only 5'6". Isley asserted the report was in error; he recalled Soles' height as being between 5'6" and 5'8". The surveilling agent testified that Soles was "maybe a little bit shorter" than Isley, whose height was 5'10". Soles did not testify and called no witnesses.

The first point raised on appeal is Judge Tyler's ruling that the Government could use defendant's attempted bribery conviction to impeach him if he chose to take the stand. Pursuant to United States v. Palumbo, 401 F.2d 270, 272–273 (2 Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969), defense counsel asked the judge to rule, prior to trial, that the Government could not use either of the Maryland convictions for impeachment pur-

---

1. Twenty years of the sentence were for the narcotics violation; a consecutive term of five years was imposed for the attempted bribery.

2. The agent had also observed a man of the same height and wearing the same costume entering and leaving the tavern but, at that time, had not had a clear look at his face.

poses. Counsel contended that the narcotics conviction would be unduly prejudicial and that since both convictions could still be appealed, neither was sufficiently final to be used against him. Although the convictions had been affirmed by the Court of Special Appeals of Maryland, Soles' counsel in that case intended to seek discretionary review from the Maryland Court of Appeals. The judge deferred a ruling until the Government had presented the bulk of its case. He then informed counsel that he would exclude the Maryland narcotics conviction but would allow the attempted bribery conviction to be used for impeachment. Whether on this account or not, Soles did not testify, and counsel made no offer of proof as to what he would have said. After the conviction in this case, the Maryland Court of Appeals granted review; a hearing in that court is scheduled for the September term.

We are unpersuaded by Soles' contention that United States v. Semensohn, 421 F.2d 1206, 1208 (2 Cir. 1970), commits us to the view of the District of Columbia Circuit, Campbell v. United States, 85 U.S.App.D.C. 133, 176 F.2d 45, 47 (1949), that a conviction under appeal cannot be used for impeachment, rather than the contrary position, which has been taken by the Fifth, Seventh and Ninth Circuits, United States v. Franicevich, 471 F.2d 427, 428–429 (5 Cir. 1973); United States v. Empire Packing Co., 174 F.2d 16, 20 (7 Cir.), cert. denied, 337 U.S. 959, 69 S.Ct. 1534, 93 L.Ed. 1758 (1949); United States v.

Allen, 457 F.2d 1361, 1363 (9 Cir.), cert. denied, 409 U.S. 869, 93 S.Ct. 195, 34 L. Ed.2d 119 (1972). The majority stance is followed in most of the states, see 16 A.L.R.3d 726, and McCormick, Evidence § 43, at 87 (Cleary ed. 1972), and has been adopted in the Proposed Federal Rules of Evidence 609(e). What led to the reversal in *Semensohn* was the denial of a mistrial when the prosecutor asked whether Semensohn had not been convicted of grand larceny, a felony, whereas in fact the defendant had never been charged with that offense but rather with attempted grand larceny in the third degree, a Class A misdemeanor. Moreover, Semensohn had pleaded guilty to the misdemeanor charge, but he had not yet been sentenced. As the court pointed out, under New York law Semensohn could have sought to withdraw his guilty plea at any time before sentencing, 421 F.2d at 1208. While the opinion did quote from the *Campbell* opinion with approval, the broader question whether a judgment of conviction cannot be used for impeachment if under appeal was not before the court, and the Government had not called the court's attention to the majority view.[3]

The question is somewhat troublesome. If the conviction should be reversed within the two years allowed by F.R.Crim.P. 33 for moving for a new trial—and commonly at least the first appellate court in the hierarchy would have considered the case within that period, the defendant would be entitled to a new trial upon showing that there was a significant possibility that a new trial

3. We have previously distinguished *Semensohn* on much the same grounds. United States v. Kaufman, 453 F.2d 306, 311 (2 Cir. 1971). In that opinion the court pointed out that impeachment of credibility by evidence of past criminal offenses can only be shown by proof of a conviction of a felony, or a misdemeanor involving moral turpitude. Other circuits have been even more reluctant to admit evidence of prior misdemeanor convictions for impeachment. See, e. g., United States v. Jansen, 475 F.2d 312 (7 Cir. 1973); United States v. Vasquez, 460 F.

2d 202 (9 Cir. 1972) (only felony convictions are admissible); United States v. Gray, 468 F.2d 257, 262 (3 Cir. 1972) (misdemeanors are admissible for impeachment only if they constitute crimes involving dishonesty or falsehood).

In United States v. Owens, 271 F.2d 425 (2 Cir. 1959), cert. denied, 365 U.S. 874, 81 S.Ct. 910, 5 L.Ed.2d 863 (1961), we refused to reverse because a conviction under appeal was used for impeachment. In that case, however, the impeaching conviction was affirmed prior to this court's decision.

with the conviction unavailable for impeachment would produce a different result. See United States v. Miller, 411 F.2d 825, 830–831 (2 Cir. 1969). This, however, would not be automatic, and the problem of making a showing is compounded when, as here, the defendant has elected not to testify, although counsel could have alleviated this difficulty somewhat by making an offer of proof. On the other hand, the defendant has at least some means of qualifying the effect of the use of such a conviction since he can explain that it is under appeal, see United States v. Franicevich, *supra*, 471 F.2d at 429, whereas an absolute rule of exclusion would totally deprive the Government of the use of the impeaching material despite the extremely high proportion of affirmances on criminal appeals. Furthermore, courts have stressed the greater probative value of relatively recent convictions, of which that here at issue is a prime example; yet these are the very ones most likely to be under appeal. When, as here, the appeal presents a constitutional issue, the process can lead all the way to the Supreme Court of the United States, and an absolute rule of exclusion would render such a conviction unavailable for impeachment for several years. In addition, a rule mandating exclusion of convictions still on appeal might well encourage frivolous appeals and dilatory tactics by defendants seeking to avoid the use of prior convictions for impeachment in pending criminal actions. Similarly, prosecutors intending to use recent prior convictions for impeachment might seek to delay trial until an appeal of the earlier judgment had been decided. We therefore adopt the view that the trial judge has discretion to allow the use for impeachment of a conviction under appeal, although he must, of course, allow defense counsel to point out the pendency of an appeal to the jury. In exercising this discretion, the judge is free, although not required, to examine any readily available papers that may bear on the substantiality of the appeal.[4] We find no abuse of discretion in Judge Tyler's refusal to rule that he would not exclude the recent Maryland attempted bribery conviction simply because it was then subject to discretionary review, which has since been granted.

■ Appellant's other claim is that the trial court should have compelled the Government to disclose the identity and whereabouts of the informant, who, it is alleged, might have supported a claim of mistaken identity. The guiding principles are stated in Roviaro v. United States, 353 U.S. 53, 61–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Soles relies on the words we have italicized in the following sentence from the opinion:

Where the disclosure of an informer's identity, or of the contents of his communication, *is relevant and helpful to*

---

4. Soles' appeal from the conviction for attempted bribery provides an example of an appeal based on extremely questionable grounds. On his appeal to the Court of Special Appeals, Soles contended that an illegal arrest, search and seizure vitiated not only the narcotics conviction but also the attempted bribery conviction. If he had not been arrested, he argued, there would have been no reason for him to attempt to bribe the police officers. The court held that the narcotics arrest was valid, the search and seizure was proper, and there was ample evidence to support the narcotics conviction. The court added that even if the arrest, search and seizure had been illegal, the bribery conviction would stand. In his petition for certiorari to the Maryland Court of Appeals, Soles argued the invalidity of his narcotics arrest at great length, but added only a single sentence attacking the attempted bribery conviction. Despite a dictum in Sugarman v. State, 173 Md. 52, 195 A. 324 (1937), that if an arrest is illegal, the officers are not acting in their "official capacity" and thus are not subject to bribery or attempted bribery, it seems most unlikely that even if the Maryland Court of Appeals should hold the arrest and consequent search and seizure to have been illegal, it would upset the conviction for attempted bribery. Compare Vinyard v. United States, 335 F.2d 176 (8 Cir.), cert. denied, 379 U.S. 930, 85 S.Ct. 327, 13 L.Ed.2d 342 (1964); United States v. Perdiz, 256 F.Supp. 805 (S.D.N.Y.1966).

*the defense of an accused,* or is essential to a fair determination of a cause, the privilege must give way.

Both reason and context demonstrate, however, that these words are not to be read with extreme literalness. Determining whether the testimony of an informer is likely to be "relevant and helpful" is a task best left to the trial court's informed discretion.[5] On the next page of the *Roviaro* opinion, the Court made it clear that the principle of disclosure is far from absolute, 353 U.S. at 62, 77 S.Ct. at 628:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

■ We have had occasion to apply these principles in many cases.[6] The most analogous is United States v. Russ, 362 F.2d 843 (2 Cir.), cert. denied, 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1966). We there sustained a refusal by the same judge to compel the Government to produce or disclose the identity of an informant who had played a role in a narcotics transaction almost identical to the part played by the informant here in the November 30 sale. Significant to the decision was this court's observation that the identification testimony of the undercover agent who made the purchase and a surveilling agent "was, in the main, most credible," despite their inability "to recall trivial details concerning Russ' clothing and the weather" and their underestimate of Russ' weight, 362 F.2d at 845. In cases like *Russ* and this one, where the undercover agent has been with the seller for substantial periods, it is highly unlikely that there has been any "mistaken" identification; the true claim must be rather that the agents are lying. That, to be sure, is an issue the defense is fully justified in raising. But here the possibility of success was even smaller that in *Russ* since the agents' very positive testimony was backed up by strong circumstantial evidence such as Soles' ownership of the car, the location of his residence, and the identity of his telephone number.[7] Under these circumstances Judge Tyler was abundantly justified in believing that the request for disclosure of the identity and whereabouts of the informer was a ploy designed to embarrass the Government and that it had no real possibility of affording a defense that could create a reason-

---

5. The Court strongly suggested that the trial judge should be primarily charged with making this determination. In the sentence following the quotation on which appellant relies, Mr. Justice Burton wrote that "the trial court may require disclosure," not that it must. And in a footnote to the same passage, the Court added: "Early decisions established that the scope of the privilege was in the discretion of the trial judge." 353 U.S. at 61 & n.9, 77 S.Ct. at 628. See United States v. Franzese, 392 F.2d 954, 962 (2 Cir. 1968), vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

Both the Proposed Federal Rules of Evidence 510(c) and the ALI Model Code of Evidence rule 230 place primary responsibility on the trial court in resolving the issue of disclosure so as to assure the defendant a fair trial.

6. This court has regularly held that the right to disclosure is not absolute. See, e. g., United States v. Rosario, 327 F.2d 561, 563 (2 Cir. 1964); United States v. Simonetti, 326 F.2d 614, 616 (2 Cir. 1964); United States v. Fredia, 319 F.2d 853, 854 (2 Cir. 1963).

7. Prior to trial, the Government commendably offered to make its witnesses available for a lineup in which they would be required to identify Soles. Compare United States v. Fernandez, 456 F.2d 638, 641 n. 1 (2 Cir. 1972). The defendant's refusal to participate in such a lineup casts further doubt on the substantiality of his claim of misidentification.

able doubt in the mind of a reasonable juror.[8]

The judgment of conviction is affirmed.

8. We call the attention of district judges who are confronted with the problem here to the procedure for *in camera* investigation of the probable nature of an informant's testimony outlined in Proposed Federal Rules of Evidence 510(c)(2) and endorsed in Judge McLaughlin's concurring opinion in United States v. Day, 384 F.2d 464, 469–470 (3 Cir. 1967). Such a procedure, which, of course, is available even though the rule should not be adopted, would serve not only to protect the defendant but to obviate many unnecessary appeals. While the proposed rule *requires* the procedure only "[i]f it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case," a showing scarcely made here, the Government might save itself much time and trouble by taking a relatively liberal stance.