UNITED STATES of America, Appellee,

v.

**Wyadell EDMONDS,
Defendant-Appellant.**

No. 562, Docket 75–1323.

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1975.

Decided May 7, 1976.

W. Kirkland Taylor, New York City, for defendant-appellant.

Thomas H. Sear, Asst. U.S. Atty., S.D. N.Y. (Thomas J. Cahill, U.S. Atty., John C. Sabetta, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Wyadell Edmonds appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York after a three day jury trial before Richard Owen, *Judge*, finding the defendant guilty of knowingly possessing heroin with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A).[1] Edmonds was sentenced to twelve years' imprisonment to be followed by three years' special parole.

---

1. 21 U.S.C. § 841(a) states in pertinent part: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;"

On appeal, Edmonds raises five claims of error: (1) that the district judge who presided over his original trial should not have been assigned his retrial; (2) that the trial court erred in refusing to order the government to disclose the identity of the informant involved in the case; (3) that there was no probable cause to justify Edmonds' arrest; (4) that the search of Edmonds' suitcase was unlawful; and (5) that the totality of the circumstances surrounding his retrial reveal a denial of his right to a fair trial. Finding no merit to any of these contentions, we affirm the judgment of conviction.

On April 30, 1974, Detective Horace Balmer of the New York Drug Enforcement Task Force received two telephone calls from a confidential informant who had previously provided accurate information to federal agents about narcotics transactions involving Edmonds and others. The informant stated that Edmonds, accompanied by a female companion, would be carrying about two ounces of high quality heroin by bus to Norfolk, Virginia, where Edmonds had to make a court appearance on a narcotics possession charge. Detective Balmer had already received notification from the Norfolk District Attorney's Office that Edmonds was to appear there in court.

A surveillance team consisting of Balmer, Drug Enforcement Agents Steinberg and Dunham and other agents from the New York Drug Enforcement Task Force, was stationed near the Trailways ticket counter in the Port of New York Authority bus terminal on May 1, 1974, the date that Edmonds was to travel to Norfolk. Edmonds, carrying a gray suitcase and accompanied by a woman later identified as Christine Summers, was arrested at the Trailways ticket counter after he had requested two tickets to Norfolk; Detective Balmer took custody of Edmonds' suitcase.

As the agents were escorting Edmonds and his companion out of the terminal, Edmonds spontaneously told Agent Steinberg that they should let the girl go free since she had nothing to do with it. Once outside the terminal, Detective Balmer informed both Edmonds and Summers of their constitutional rights.

Edmonds was taken to Task Force headquarters; a search of the suitcase produced, inter alia, a black and white plastic bag containing two manila envelopes, one paper bag, and an aluminum foil packet. Chemical analysis of the contents of these packages revealed the substances therein to be 8.4 grams of 99.6 percent pure heroin and 38 grams of agents commonly used to dilute heroin for resale purposes. Summers was taken to the Manhattan South Precinct to be searched; she was released shortly thereafter.

Edmonds was interviewed by Assistant United States Attorney Alan Kaufman that same day. Detective Balmer informed Kaufman of the circumstances surrounding Edmonds' arrest and, after again receiving notice of his constitutional rights, Edmonds stated that the agent's description of the arrest was correct and that he himself did not use narcotics.

Edmonds was indicted on May 10, 1974. His pretrial motions to suppress the heroin seized at the time of his arrest and for disclosure of the informant's identity were denied after an evidentiary hearing. Trial began on December 5, 1974 and continued until December 9, 1974, when a mistrial was declared because the jury was unable to agree on a verdict.

At Edmonds' second trial, important additional testimony not elicited in the first proceeding was presented by Jerome Christian, who at one time was in the narcotics business with Edmonds. On May 16, 1974, Christian pleaded guilty to a federal narcot-

Heroin is defined as a controlled substance in 21 U.S.C. § 812 Schedule I, (b)(10).

21 U.S.C. § 841(b)(1)(A) sets out the penalties for violation of subsection (a).

ics offense and agreed to cooperate with the authorities in exchange for the government's making his cooperation known to the judge assigned to his case. He testified at Edmonds' second trial that, on two occasions in late April 1974, Edmonds told him about his plans to get heroin from Willie James, Jr., known as "Junior," and take it to Virginia to sell. In May, 1974, Edmonds also related to Christian the details of his arrest at the bus station. Finally, on January 23, 1975, while working in an undercover capacity, Christian was "wired" with a transmitter and tape recorder; he went to a Manhattan apartment where he talked with Jack Kennedy, Junior, and Edmonds.[2] During the conversation, Junior described the heroin that he sold to Edmonds as 100% pure. Edmonds replied that he had not known how pure the heroin was until its chemical analysis by the police after his arrest. After both Christian and Junior commented on Edmonds' foolishness in travelling with the heroin to Virginia, Edmonds stated that he was trying to make money and could do so by selling in Virginia.

One other unusual series of events bears mention. Prior to the commencement of the second trial, Christine Summers became seriously ill from the aftereffects of an abortion and died. On May 25, 1975, the day the jury was to be selected, Edmonds, for the first time, advised the court and the government of her death and the fact that she was to be buried that day. All agreed that, as a practical matter, there was no way to get Edmonds to the funeral in time. In summation at the second trial, Edmonds' counsel began to argue that Summers, who had been arrested with Edmonds, had planted the heroin on him, had been the confidential informant, and had been arrested only as a pretense to protect her identity. Edmonds, violently disagreeing with the propriety of that argument and protesting that he would not permit it to be made, voluntarily absented himself from the courtroom, although he had been ad-

vised that such action might be harmful to his case.

Edmonds did not testify at the second trial. In fact, the only witness called by the defense was Detective Balmer, who testified that the street value of the diluted heroin was approximately $50,000.

*Discussion.*

■ Edmonds' argument that Judge Owen was precluded from retrying the case because he was the judge in the original trial merits only brief discussion. Although appellant concedes that the issues involved in his case are not complex, he contends that the first trial was sufficiently antagonistic in terms of its facts and his attempt to represent himself that Judge Owen would have a "subconscious biased attitude" against appellant. As evidence of bias, Edmonds points to the "harsh" sentence, the trial court's denial of his request for disclosure of the informant's identity and denial of his request for more time to prepare his newly appointed counsel. These claims are patently frivolous.

While in *United States v. Bryan*, 393 F.2d 90 (2d Cir. 1968), this Court did hold that ordinarily the retrial of a *lengthy* and *complex* criminal case should be reassigned to a new trial judge, in *United States v. Newman*, 481 F.2d 222 (2d Cir.), *cert. denied*, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973), we also held that such reassignment was not required in all cases, especially those in which the original trial lasted only a few days. In the present case, the first trial took only four days; furthermore, neither Edmonds nor his counsel ever requested reassignment to a different judge for the retrial. The record supports no suggestion of bias by the trial judge against Edmonds; indeed Judge Owen took care to safeguard Edmonds' rights when Edmonds himself jeopardized them by his disruptive courtroom behavior, as will be discussed *infra*.

---

2. Prior to the commencement of his second trial, Edmonds moved to suppress the tape recording. The district court denied the motion

and Edmonds has not appealed from that ruling.

Edmonds' primary claim of error involves the trial court's determination that the government was not required to disclose the identity of the confidential informant who had alerted the authorities about Edmonds' possession of heroin during his attempted departure to Norfolk. Edmonds asserts that his ex-wife Sarah Roberts was the informant and that she supplied Edmonds with the heroin. If this assertion were true, his argument continues, then Roberts' actions would provide two potential defenses to the offense charged. First Edmonds contends that he could have argued that Roberts "planted" the heroin in his suitcase without his knowledge and then informed on him. Second, Edmonds claims that he could have argued an entrapment defense by virtue of Roberts' status as a government agent and her supplying the heroin to him.

In advancing his claim of error, Edmonds relies on language found in *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957) which states:

Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [government's] privilege [of nondisclosure] must give way.

In *United States v. Soles*, 482 F.2d 105 (2d Cir.), *cert. denied*, 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973), this Court counseled that these words were not to be read with extreme literalness, since the Supreme Court made clear in *Roviaro* that the principle of disclosure, far from absolute, required balancing the individual's right to prepare his defense against the public interest in ensuring the flow of information. The proper balance would depend on the particular circumstances of each case, requiring consideration of the crime charged, potential defenses, the possible significance of the informer's testimony, and other relevant factors. 482 F.2d at 109.

The defendant in *Soles*, also convicted for a drug offense, had been introduced to his buyer, an undercover government agent, by an informant. He argued that disclosure might have supported a defense of mistaken identity. The Court found this proposed defense to be of dubious value, since the agent had been with the seller for substantial periods of time and his testimony was supported by strong circumstantial evidence. In short, the Court concluded that the request for disclosure "had no real possibility of affording a defense that would create a reasonable doubt in the mind of a reasonable juror." 482 F.2d at 109–110. Similarly, in *United States v. D'Amato*, 493 F.2d 359 (2d Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 50 (1974), a paid informant introduced an undercover agent to an intermediary for a drug purchase; the informant was present at some of the meetings occurring between buyer and seller. The Court concluded that any argument that the informant could have cast doubt on the agent's testimony was pure speculation; the assertion that the informant was intricately involved in the transaction charged was simply not supported by the record. *See also, United States v. Morell*, 524 F.2d 550, 557 (2d Cir. 1975); *United States v. Hodges*, 493 F.2d 11 (5th Cir. 1974).

Applying these legal standards to the facts of the instant case leads us to conclude that Judge Owen did not abuse his discretion in denying disclosure. The record offers no support for either of the defenses Edmonds claims was thwarted by nondisclosure. At no time did appellant or his counsel offer any proof that would have validated the idea that the heroin had been planted in Edmonds' suitcase or that he had received the drugs from any individual who might have been the government's informant. Indeed, in an *ex parte* affidavit, the government stated that it had no information that in any manner indicated that the heroin had been placed in the suitcase by anyone other than Edmonds. Furthermore, defense counsel interviewed Sarah Roberts, the person Edmonds claims was the informant; in a letter to Judge Owen to clarify his affidavit in support of a motion for a new trial, counsel stated that Roberts at no time stated or implied that she was the

source of the drugs. Because Roberts did describe her prior involvement with Edmonds in the drug business, damaging information which could have been elicited on cross-examination, defense counsel convinced Edmonds not to call her as a witness.

In contrast to the lack of any evidence other than counsel's speculation about a defense centering on Roberts, the government presented uncontradicted and substantial evidence that Edmonds purchased the heroin from Junior. Jerome Christian testified that Edmonds had told him in April, 1974, that he was supposed to obtain $1,200 worth of heroin from Junior. Christian also related the conversation, described earlier in this opinion, between Junior, Edmonds, Kennedy and himself about the purity of Junior's product; in addition, the jury heard the tape recording of that conversation. From this evidence, we must conclude, as we did in *Soles, supra*, that the request for disclosure had no real possibility of affording a defense that could create a reasonable doubt in the mind of a reasonable juror.

■ Edmonds next argues that no probable cause existed for his warrantless arrest at the bus depot.[3] Probable cause to arrest exists when an officer has knowledge of facts and circumstances "sufficient to warrant a prudent man in believing" that an offense is being or has been committed. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964). Since the actions by the authorities were triggered largely by an informant's tip, we must first consider whether that hearsay information satisfied the standards formulated by the

Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969),[4] (1) that the informant be shown to be reliable and credible and (2) that the information provided demonstrates the underlying circumstances from which the informant concluded that the accused was engaged in criminal activity.

■ The informant in the instant case was personally known to Detective Balmer and had previously supplied the authorities with information which had led to five purchases of narcotics by undercover agents and three seizures of heroin and cocaine.[5] In fact, information from this same source had resulted in Edmonds' February 1974 arrest in Norfolk for possession of drugs. Such a proven "track record" is clearly sufficient to satisfy the *Aguilar-Spinelli* requirement of informant reliability. *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975); *United States v. Sultan*, 463 F.2d 1066, 1069 (2d Cir. 1972); *United States v. Acarino*, 408 F.2d 512 (2d Cir.), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969); *United States ex rel. Cunningham v. Follette*, 397 F.2d 143 (2d Cir. 1968), *cert. denied*, 393 U.S. 1058, 89 S.Ct. 699, 21 L.Ed.2d 699 (1969).

We now turn to an assessment of whether the informant either detailed the manner in which the information was gathered or sufficiently described the underlying circumstances so that a police officer could reasonably believe that the suspect was engaged in criminal activity. The informant

---

3. Appellant has not suggested that his arrest was invalid because the agents failed to secure a warrant when there arguably was sufficient time to do so. This issue would have come within the Supreme Court's recent ruling in *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 44 U.S.L.W. 4112 (1976), which upheld a warrantless public arrest based upon probable cause that a felony was being committed, even though the authorities had received information from the reliable source six days prior to the arrest. Edmonds also was arrested in a public place and the time differential between receipt of the confidential information and arrest was less than one day.

4. Although both *Spinelli* and *Aguilar* involved the validity of search warrants, the Supreme Court noted that the analysis required is "basically similar" to determining the propriety of an arrest without a warrant. *Spinelli v. United States, supra*, 393 U.S. at 417 n. 5, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

5. There is no "absolute" requirement that the information must have led to prior convictions. *United States v. Comissiong*, 429 F.2d 834, 836 (2d Cir. 1970).

reported the following data to the authorities: that Edmonds had to be in Norfolk on May 1; that he would travel there by bus on the evening before; that he might be traveling with a female companion; that he would be carrying about two ounces of high quality heroin; that the informant personally had seen the heroin in Edmonds' possession. The informant thus gave the narcotics agents a precise prediction of when, where and how the crime would occur from personal knowledge. Given the reliability of the informant, this information provided sufficient detail to justify a finding of probable cause that Edmonds was engaged in activities in violation of the narcotics laws. *See, United States v. Acarino, supra; United States v. Foster,* 478 F.2d 1001 (7th Cir. 1973). Furthermore, the agents verified the details of this information to the extent possible by corroborating that Edmonds was due in court in Norfolk on May 1 and by positioning a surveillance team at the bus depot, where Edmonds and a female companion attempted to buy tickets to Norfolk, all events in accord with the key elements of the informant's tip. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Acarino, supra; United States v. Foster, supra.* The cumulative effect of the informant's report and the independent police corroboration was sufficient to establish probable cause.

■ Finally, Edmonds contends that the government failed to establish probable cause because it refused to reveal the identity of its informant. In *United States v. Comissiong,* 429 F.2d 834 (2d Cir. 1970), this Court held that disclosure of an informant's identity is required only when the existence of probable cause depends *entirely* on the reliability of the informant. Nondisclosure is permissible where, as here, independent police investigation and corroboration contributed to probable cause since, "even though [the independent evidence is] not adequate of itself to establish probable cause, [it] constitutes a sufficient voucher against fabrication, although obviously not a complete one." 429 F.2d at 839. *See also, Mapp v. Warden,* 531 F.2d 1167, 1173 (2d

Cir. 1976); *United States v. Carneglia,* 468 F.2d 1084 (2d Cir. 1972), *cert. denied, sub nom., Inzerillo v. United States,* 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973).

■ Edmonds also claims that the warrantless search, at Task Force headquarters, of the suitcase which he carried at the time of his arrest was unlawful. This argument must be rejected. Given our finding that probable cause existed to arrest Edmonds, the suitcase clearly could have been searched at the bus depot as a search incident to custodial arrest. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Supreme Court held that once an accused has been lawfully arrested, the effects in his possession that were subject to search at the time and place of the arrest may lawfully be searched and seized without a warrant even after a substantial time lapse following the arrest. *See also, United States ex rel. Muhammad v. Mancusi,* 432 F.2d 1046 (2d Cir. 1970), *cert. denied,* 402 U.S. 911, 91 S.Ct. 1391, 28 L.Ed.2d 653 (1971) (search of briefcase in immediate possession at time of lawful arrest was just as proper when done shortly thereafter at F.B.I. headquarters).

■ We also find unpersuasive Edmonds' contention that his trial "in its totality" amounted to a denial of due process. In support of his claim, Edmonds points to his mental unpreparedness for trial, his emotional distress over the death of Summers, the insufficient amount of time allowed his assigned counsel to prepare for trial, and his self-removal from the courtroom during summation. While Edmonds concedes that none of these factors taken alone constitutes a denial of a fair trial, he argues that their cumulative effect justifies granting him a new trial.

We begin our consideration of this claim by noting the principle that "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 605 (1953). A review of the record convinces us

that Edmonds received the fair trial that was his due.

On the day that the trial was to commence, at a conference in chambers with both counsel and appellant present, the court and the government learned for the first time that Christine Summers had died and that her funeral was scheduled for that very hour. While the judge was sympathetic towards Edmonds, all present, including appellant, agreed that there was no practical way to get Edmonds to the burial in time. Asked by the court if he wanted a one day adjournment, Edmonds replied that he would like to hear the tape recording made by Jerome Christian. The judge then made the tape available to Edmonds that morning and postponed jury selection until that afternoon.

There is no factual basis in the record to support Edmonds' claim that his assigned attorney lacked sufficient time to prepare for trial. Mr. Kessler, an experienced trial attorney, was assigned two weeks prior to trial and never once suggested to the court that he was deprived of an adequate preparation period.

During the defense counsel's summation, he suggested to the jury that Christine Summers was the confidential informant. Edmonds interrupted summation, stating that he would not allow this argument to be made and that he refused to participate further in the proceedings. After fully discussing this turn of events with counsel and appellant out of the jury's presence,[6] the court permitted Edmonds to leave the courtroom. The judge cautioned the jury upon its return that Edmonds' voluntary absence was to play no part in its consideration; this instruction was repeated in the jury charge. Since the court exerted maximum effort in attempting both to avoid Edmonds' self-imposed exile and to diminish any adverse effect such absence might have on the jury, we do not find that the incident requires us to grant him a new trial.

Finally, Edmonds argues that his counsel's insistence upon implicating Summers as the informant rather than calling Sarah Roberts as a witness "promoted" his guilt in the minds of the jurors. After the above described incident, defense attorney Kessler stated for the record that he fully interviewed Roberts, at which time she denied being the informant. Counsel further stated that he recommended to Edmonds that Roberts not be called because of the damaging evidence about her prior drug dealings with Edmonds which was certain to be elicited on cross-examination. Furthermore, he felt that even if she had admitted to being the informant, she would then have been able to testify directly that she had seen the heroin in Edmonds' possession just prior to his arrest. A more attractive alternative strategy, ultimately unsuccessful, was for counsel to implicate Summers, who was dead. We cannot say that this tactical choice rendered Edmonds' trial unfair.

In sum, the cumulative effect of the points raised was not of such egregious nature as to have deprived appellant of a fair trial. *See, United States v. McGovern*, 499 F.2d 1140, 1144 (1st Cir. 1974); *United States v. Follette*, 298 F.Supp. 973, 974 (S.D. N.Y.1969).

Judgment of conviction affirmed.

OAKES, Circuit Judge (concurring):

I concur in the result.

In the light of the admissions on the Christian tape, any failure to advise the defense of the identity of the informer was harmless error. Any entrapment defense would have been unavailing in any event. *Hampton v. United States*, —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. 4542 (1976). While counsel's suggestion that the late Ms. Summers was the informant probably had the effect Edmonds

---

**6.** The court offered appellant a recess for discussion with counsel, which offer was declined. Edmonds' attorney advised him that his absence from the courtroom might have a negative impact on the jury. The court also directly recommended that Edmonds remain in the courtroom and carefully ascertained Edmonds' awareness of the possible adverse impact emanating from his actions.

thought it had, of "promoting" his guilt in the eyes of the jury, his absence from the courtroom at his own request would have tended to offset the harm from counsel's tactics; Judge Owen handled the matter as best he could.