**UNITED STATES of America,**
**Appellee,**

v.

**Zali FRIED and Simon Brach, Appellants.**

**No. 823, Docket 72–1295.**

United States Court of Appeals,
Second Circuit.

Argued June 15, 1972.

Decided July 25, 1972.

---

Harvey L. Greenberg, Brooklyn, N. Y. (Saytanides, Siegel & Lebowitz, Brooklyn, N. Y., on the brief), for appellants.

L. Kevin Sheridan, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty. E.D.N.Y., David G. Trager, Thomas P. Puccio, Asst. U. S. Attys., of counsel), for appellee.

Before KAUFMAN, HAYS and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellants Fried and Brach, mother and son, appeal from convictions on one count of unlawful possession, 18 U.S.C. § 659, and one count of unlawful sale, 18 U.S.C. § 2315, of "Unisonic" AM-FM stereos moving as part of or constituting a foreign shipment of freight. Each appellant was convicted on both counts, but the jury was unable to agree on a theft count (18 U.S.C. § 659) and a conspiracy count (18 U.S.C. § 371) against appellants, or on counts against appellant Fried's husband, Ishak, and one Aaron Schatten. Some 589 cartons, each containing two sets of the Japanese eight-track stereo units—valued at over $62,000 in terms of the importer's cost —were stolen on October 22 and 23, 1970, from Pier 21 in Brooklyn, while consigned to the sole American importer, North American Foreign Trading Corporation ("North American"). The theft was discovered on October 26, and within weeks three separate quantities of the missing stereos were found, in the hands of a New York City retailer, Joseph Levy, a Philadelphia wholesaler, William Hendler, and retailers who had purchased sets from a Pennsylvania wholesaler, Carl Beddo.

Of the 85 stereo units seized from an Orchard Street loft in Manhattan from Levy, at least 82 bore serial numbers falling within the range of serial numbers for the missing units. Only one shipping carton was found at Levy's, and that in the hallway immediately outside the storeroom. Twenty-two units were seized from Hendler along with ten empty cartons; of these, 20 units and eight cartons bore stolen serial numbers. Six units were taken from purchasers from Beddo, of which five bore numbers within the indicated range. Not insignificantly, all of the units seized from Levy and Hendler and at least half of those seized from customers of Beddo were sold by people connected with Fried Trading Co., a Brooklyn firm owned by appellant Zali Fried and her husband, and employing appellant Brach as a trucker.

While appellants dispute the sufficiency of the evidence, there were ample facts to support their convictions. On October 28, 1970, according to Hendler, Mrs. Fried called him and sold him over the telephone "a couple of dozen" of the stereos at only $5.00 per unit above North American's cost and a full $7.00 below North American's lowest selling price to retailers. Curiously, Hendler received no bill or invoice from the Frieds when the units were delivered a few days later, and the shipping label on the cartons referred to a supposed Manhattan company—the "G & S Trading Co."—that was later shown to be fictitious. Appellant Brach disclaims knowledge that the stereos he delivered to Levy had been stolen, suggesting that it was coincidence that he had Levy's 100 stereo units delivered in a truck driven by a part-time New York City policeman, who was "moonlighting" for Brach's trucking business. But no invoice or bill was received for these units either, and Brach retained the receipt for the goods he had Levy sign. Beddo purchased his stereos over-the-tailgate, so to speak, out of a parked truck at the

Fried place of business from one of the younger Fried sons. It remains a bit of a mystery how Fried Trading Co. people in late October 1970 became Unisonic purveyors, for nobody connected with Unisonic or North American ever sold stereos to the Frieds or their firm. A footnote is that the Fried Trading Co. does import Japanese stereos, but these are brand-named "Granada" and not "Unisonic."

It may be that, giving appellants the benefit of the doubt, the evidence against appellants is circumstantial because not all of the stereos and cartons seized fit the range of serial numbers on the bill of lading for the stolen stereos or because there is nothing to match each stereo unit to a carton. So is most evidence, however, upon close analysis, and when stereos with the same serial numbers as the missing units in 80 or 90 per cent of the cases, and cartons with the same numbers in several instances, are sold by a business that has never bought them, at a price a little lower than the usual wholesale price, and without the customary invoicing, the inference that can be drawn by a rational trier of fact is not very remote. To appellate judges who review records, it is difficult to see how any other inference could be drawn in this case.

■ While there was no direct evidence connecting appellant Fried with the Levy sale, in light of her participation in the Hendler sale and her activity in a managerial capacity in the family business operation, *see* Nye & Nissen v. United States, 336 U.S. 613, 619–620, 69 S.Ct. 766, 93 L.Ed. 919 (1949), and in light of what was a sound and fair aiding and abetting charge, she was properly found guilty on the Levy sale count. *Cf.* United States v. Callahan, 439 F.2d 852, 861–862 (2d Cir.), cert. denied, 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971).

■ Brach's knowledge that the Levy stereos had been stolen was also proven inferentially only, but it was proven —not merely because the goods his trucking concern delivered were stolen or by his relationship to his mother as a Fried Co. owner, but also by the unusual circumstances of his delivery of $5,000 worth of stereos without a bill or an invoice and by the use of a part-time police officer for delivery purposes, thereby removing Brach himself from transportation of the stolen goods, although he was on hand at Levy's at the time of delivery. *Cf.* United States v. Edwards, 366 F.2d 853, 867 (2d Cir.1966), cert. denied, Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967) ("surreptitious and furtive" transfers of stock in bars and lavatories for fraction of face value circumstantial evidence of theft and knowledge that stock was stolen). Even if this evidence were not enough standing alone, " '[p]ossession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence.' " United States v. Minieri, 303 F.2d 550, 554 (2d Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962), *quoting* Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). In light of the circumstances just recited, Brach's failure to offer any explanation is fatal to his claim of innocent possession.

Appellant Fried claims prejudice from the testimony of two witnesses. One, Levy, volunteered, not responsively, that Ishak Fried's brother had told him, "It's better to be in jail than to be dead." Upon prompt objection this testimony, however, was stricken and the jury instructed to disregard it; its obvious impropriety as hearsay cannot be deemed of such lasting or permeative influence as to be prejudicial in any real sense of the word. Our regard for the jury system is too high to warrant a view that duly stricken testimony of this nature

would be given credence or, if given credence, would influence the verdict.

 The other witness, FBI Agent Michael Downey, testified that only a month or so before the Unisonic stereos were missed from Pier 21 he had found at the Fried place of business a carton of men's jackets also stolen from a Brooklyn pier. This testimony could not properly have been elicited in the Government's direct case to show a probability that the defendants committed the charged crime because they were of bad character, United States v. Bozza, 365 F.2d 206, 213 (2d Cir.1966), and even though it might have gone to the issue of guilty knowledge or intent, see United States v. Deaton, 381 F.2d 114, 117–118 (2d Cir.1967), and authorities cited therein, it was not so limited after proper and timely objection. The testimony was, however, produced only on rebuttal, after Ishak Fried had testified, on cross-examination to be sure, that he could not recall any previous seizure of new merchandise but that he had had on the premises shoes, old clothing and dresses for distribution to the poor through his yeshiva. Thus it did go toward his credibility. That the admission of this testimony, even if erroneous as being hearsay, was not prejudicial may be inferred from the fact that Ishak Fried was not convicted in this 9-day trial. The evidence against Zali Fried was more than enough to justify a conclusion that admission of Downey's testimony was harmless.

Finally, the argument that the carton found in the hallway of Levy's loft was not admissible is grasping at straws. While the hallway may have been used by other tenants, the Waterfront Commission agent who found the carton discovered it just outside the Levy door, which in turn was "isolated by itself. . . ." With a veritable treasure trove of pirated eight-track units inside the loft, absent their cartons, and proof of the sale of cartons and stereos by the Frieds to Levy, the inference that a carton located outside an isolated door in the hallway might have come from Levy's by way of the Frieds is not, we think, altogether unwarranted or unjustified.

Judgment affirmed.