**UNITED STATES of America,**

v.

**Zali FRIED, Defendant.**

**No. 71 CR 584.**

United States District Court,
E. D. New York.

April 10, 1973.

Robert A. Morse, U. S. Atty., E. D. New York, for United States of America; Thomas P. Puccio, Asst. U. S. Atty., of counsel.

Thal & Youtt, New York City, for defendant Zali Fried.

## MEMORANDUM DECISION and ORDER

BARTELS, District Judge.

Zali Fried moves this court, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C., for an order granting a new trial based upon newly discovered evidence and upon evidence of an exculpatory nature allegedly suppressed by the prosecutor, Assistant U. S. Attorney Thomas P. Puccio. Incidental to the motion for a new trial, defendant moves this court for a post-trial discovery order for inspection of certain documents and reports allegedly in the prosecution's possession, which are likely, defendant contends, to establish the negligent suppression of exculpatory evidence. Accordingly, the court held a hearing at which Assistant U. S. Attorney Puccio was examined at length.

On March 3, 1972, following a nineday jury trial, Zali Fried, along with her son Simon Brach, was convicted on one count of unlawful possession (18 U.S.C. § 659), and one count of unlawful sale (18 U.S.C. § 2315) of "Unisonic" AM–FM stereos, moving as part of a foreign shipment of freight. Fried was sentenced to three years in prison and a fine of $5,000 on the first count, and on the second count she was placed on probation for a two-year period following the completion of the prison sentence. Her conviction was affirmed by the Court of Appeals, Second Circuit, on July 25, 1972, and on December 11, 1972 the Supreme Court denied Fried's petition for a writ of certiorari. Bail has been continued throughout the lengthy appeal process.

### New Trial Standards

■■ It is well settled that motions for new trial are not favored, United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946), and, in the interest of finality of judgments, should not be granted unless the defendant satisfies certain minimum requirements. A new trial may be granted under Rule 33 "if required in the interest of justice." In such event, the evidence must meet the following requirements: (a) It must have been discovered since the trial; (b) It could not have been discovered with due diligence before or, at the latest, at the trial; (c) It must be material and not merely cumulative or impeaching; and (d) It must be of such a nature that it would probably produce a different verdict in the event of a retrial. See United States v. Kahn and Teleprompter, 472 F.2d 272 (2d Cir., 1973); United States v. DeSapio, 456 F.2d 644 (2d Cir. 1972); United States v. Polisi, 416 F.2d 573 (2d Cir. 1969);

United States v. Costello, 255 F.2d 876 (2d Cir. 1958), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551; Larrison v. United States, 24 F.2d 82 (7th Cir. 1928).

■ When, however, the newly discovered evidence was known to the Government at the time of trial but not disclosed, new dimensions are added to the rule. As we read the authorities, governmental suppression of evidence, which requires a new approach, may be classified in three categories: (1) Deliberate suppression, including failure to disclose evidence whose high value to the defense must have been obvious to the prosecutor, United States v. Keogh, 391 F.2d 138, 147–48 (2d Cir. 1968); (2) Suppression, after a request by defendant, of evidence favorable to the accused, material either to guilt or punishment, irrespective of the good or bad faith of the prosecutor. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The prejudice to the defendant, according to *Polisi, supra,* is to be measured by the effect of the suppression upon defendant's preparation for trial, rather than its effect upon the jury's verdict. But at all events it must be material and of some substantial use to the defendant. (3) Non-deliberate suppression of evidence by the prosecutor. In such event, a showing must be made that the suppressed evidence would probably have produced a different verdict. Kyle v. United States, 297 F.2d 507 (2d Cir. 1961). Placing in this category forgetfulness and failure to appreciate the use which the defense might make of the evidence, Judge Friendly said in United States v. Keogh, *supra:*

> "To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties." 391 F.2d at 148.

## Application of the Standards

We turn now to the application of the above criteria to defendant Fried's motion for post-trial discovery and for a new trial. A brief description of the facts follows.

Defendant and her husband, Ishak Fried, are in the business in Brooklyn, New York, of importing and selling Japanese stereo radios under the name "Granada". On October 22d and 23d, 1970, approximately 589 cartons, each containing two sets of Japanese Eight-Track Stereos ("Unisonics"), valued at over $62,000, were stolen from Pier 21 in Brooklyn, while consigned to the sole American Importer, North American Foreign Trading Corporation ("North American"). The theft was discovered soon thereafter, on October 26th, "and within weeks three separate quantities of the missing stereos were found, in the hands of a New York City retailer Joseph Levy, a Philadelphia wholesaler, William Hendler, and retailers who had purchased sets from a Pennsylvania wholesaler, Carl Beddo." United States v. Fried and Brach, 464 F.2d 983, at 984 (2d Cir., 1972). To continue the Court of Appeals summary, "Of the 85 stereo units seized from an Orchard Street loft in Manhattan from Levy, at least 82 bore serial numbers falling within the range of serial numbers for the missing units. Only one shipping carton was found at Levy's, and that in the hallway immediately outside the storeroom. Twenty-two units were seized from Hendler along with ten empty cartons; of these, 20 units and eight cartons bore stolen serial numbers. Six units were taken from purchasers from Beddo, of which five bore numbers within the indicated range. Not insignificantly, all of the units seized from Levy and Hendler, and at least half of those seized from customers of Beddo were sold by people connected with Fried Trading Co., a Brooklyn firm owned," *Id.,* at 984, by Zali Fried and her husband.

As the Appellate Court has already noted, ample facts were adduced to sup-

port defendant Fried's conviction. According to witness Hendler, Zali Fried called him and sold him a couple of dozen of the stereos "at only $5.00 per unit above North American's cost and a full $7.00 below North American's lowest selling price to retailers." *Id.*, at 984. Hendler received no bill or invoice from Fried before or after delivery of the units; furthermore, the shipping label on the cartons referred to "G & S Trading Co.," an altogether fictitious company. No bill or invoice was received by Levy either. Beddo purchased his stereos "over-the-tailgate," from a parked truck at the Fried place of business. Defendant Fried never adequately explained how Fried Trading Co. became seller of Unisonics in late October, 1970; and this was especially incriminating in view of the fact that neither Unisonics nor North American had ever sold stereos to the Frieds or their firm. While not all of the stereos and cartons seized from Hendler, Levy and Beddo fit the range of serial numbers from the solen stereos, most did.

In the context of the above background, we now consider defendant Fried's contentions: She contends that "the Government picked and chose from all of the evidence available, to select those items most incriminating defendant. The balance of the Government's evidence, which was exculpatory of defendant's guilt, was simply neglected and not turned over to the defendant as required under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." In support of these charges and both of her motions, she claims that she has discovered new data which sheds new light on her culpability. She maintains that the prosecutor was guilty of suppression of evidence because:

■ 1. Stolen Unisonic stereos from the same shipment turned up in the hands of others: Lax, Garfinckel, Chai Sales, and Lowinger, chief executive of North American, the consignee, and the prosecution never revealed this purportedly exculpatory material to the defense.

Viewed most favorably, defendant's position is that stolen Unisonic stereos were circulating throughout the market. This in no way exculpates defendant Fried. There is no evidence whatsoever to support the assertion that the Government unfairly and arbitrarily singled out the Frieds for prosecution. Nor is there any evidence of governmental suppression of exculpatory data. On this score, the Assistant United States Attorney avers that he "had no specific knowledge concerning the alleged seizures from these other individuals . . ." And at no point throughout the trial did the Government maintain that the list of stolen stereos seized from Hendler, Beddo and Levy was complete. Indeed, at the trial itself, Lax was called by defense, and Lowinger recalled by defense for the purpose of establishing precisely the same point they now urge as a newly discovered fact. Whatever the case may have been as to Lax, Garfinckel, Chai Sales and Lowinger, we repeat, the circumstantial evidence was overwhelming against Fried. Therefore the so-called "suppression of new data" under this point is totally unsupported by any evidence.

2. One Andrew Serhofer—the trucker authorized by North American to pick up the stereos at the pier—was apparently arrested for theft of goods from the pier on another occasion, and therefore it is plausible to suspect him of actually having stolen the stereos in the instant case. Again there is no evidence to indicate that the prosecutor had knowledge of Serhofer's alleged past criminal activity. Assistant United States Attorney Puccio has sworn that he knew nothing of Serhofer's past. Moreover, an arrest, without conviction, would have been inadmissible to impeach witness Serhofer.

3. The Assistant United States Attorney failed to disclose the existence of an indictment pending in the Southern District of New York against Joseph Levy, a key witness, for possession of stolen property at the time he testified in this case.

■ The prosecutor concedes that he knew that the witness, Joseph Levy, was under indictment in the Southern District of New York at the time he testified for "criminally receiving stolen property" and that he failed to disclose the same on the assumption that it could be of no use to the defense and thus was irrelevant to the case. The Assistant United States Attorney testified that Joseph Levy's attorney, Gilbert Rosenthal informed him of the pending indictment in the Southern District of New York, before the instant case came to trial, but that the assistant had never been given a "rap sheet" on Levy by anyone. We note at the same time that trial counsel for Fried never demanded from the Government a "rap sheet" or an arrest record or any background information concerning Joseph Levy. It has been held that "such evidence of misconduct as an indictment is not normally admissible for impeachment purposes. See United States v. Bowe, 360 F.2d 1, 14–15 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966)." United States v. Acarino, 408 F.2d 512, 515 (2d Cir.), cert. denied, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969). Even if Levy's indictment had been disclosed at the trial, no inference can be drawn from this omission that the result would have been different. To repeat what was said in United States v. Acarino, *supra*, at 516: "We do not express approval of the decision of the assistant not to inform the court and the defense of his discovery that a key witness was under indictment." While it is true that an indictment may not be admissible at trial to impeach credibility, arguably it might be admissible to show possible motivation of the witness to testify favorably for the Government and also lead the defense to investigate possible governmental promises to the witness. See, e. g., United States v. Bonanno, 430 F.2d 1060 (2d Cir. 1970). However, at the hearing Assistant United States Attorney Puccio categorically denied that any promises were made to Levy with respect to the Southern District indictment or otherwise for his testimony.[1] We believe that the Assistant was careless in not making the disclosure and that his failure to disclose was improper conduct in spite of the probability that the indictment would not have been admissible. But we also find that the evidence was not deliberately suppressed for the sake of obstruction, nor that its value to the defense was so high that it could not have escaped the prosecutor's attention. We believe that its disclosure would have had no effect upon the jury's verdict. Therefore, we find no justification for ordering a new trial upon this ground. See United States v. Keogh, *supra*; United States v. Acarino, *supra*, 408 F.2d at 516.

In support of her position, defendant cites United States v. Bonanno, *supra*, which involved a negligent non-disclosure by the prosecutor of the existence of an indictment against a major prosecution witness. There the Court held that since this was not a deliberate suppression and since the non-disclosed evidence was not of a nature whose high value to the defense "could not have escaped the attention of the prosecution," a new trial should not be ordered. At the same time that Court pointed out that the question to be resolved in cases of this type is whether there was a significant chance that this added data could have induced a reasonable jury to avoid a conviction. See also United States v. Miller, 411 F.2d 825, 832 (2d Cir. 1969). The answer to this question in this case must be in the negative.

1. On May 30, 1972, some time after the completion of the instant case, and after Joseph Levy was convicted in the Southern District of New York, the Assistant United States Attorney sent a letter to Judge Wyatt, the sentencing judge in the Levy case, indicating that Levy's cooperation was indispensable to the prosecution of Zali Fried. We believe this *ex post facto* statement in no way controverts Puccio's categorical denial that no promises were made to Levy in order to induce his testimony.

4. A Unisonic outer carton bearing a serial number within the stolen range, found by an agent outside of Joseph Levy's storage loft, was received in evidence, when in fact it did not belong to Levy but to a neighboring merchant, Sonny Goldsmith. Fried contends that Joseph Levy's brother, Aaron, informed the prosecutor of this fact and the prosecutor chose to withhold this information from the defendants, even though it too would have established that many other persons were in possession of stolen Unisonic stereos, and that at least part of the evidence introduced against Fried was evidence unrelated to Fried.

Assistant United States Attorney Puccio avers that while the trial was in progress he spoke to Aaron Levy about the delivery of Unisonics to JNL Discount Center by Simon Brach. Aaron Levy's version "was essentially the same as that of his brother Joseph Levy." Puccio recalls that Aaron Levy "stated that he had thrown away the outer cartons which had contained the Unisonics. This was for the most part consistent with the testimony at the trial which indicated that 100 Unisonics contained within 50 outer cartons were delivered to the JNL Discount Center and that only one such outer carton was found when the police searched Levy's loft and its general vicinity. Since almost all the Unisonics found at JNL Discount Center bore serial numbers which were within the range of the stolen Unisonics, the significance of Aaron Levy's statement to me that he had thrown away all the outer cartons was not immediately apparent."

We accept the Assistant United States Attorney's version of the facts and conclude that failure to disclose this data was not a deliberate suppression of exculpatory evidence. It was, at most, data which hindsight discloses might have been put to some use by defendant's counsel. See United States v. Keogh, supra, 391 F.2d at 148, and discussion, supra, at 228–229. What use the defendant could have made of this evidence is not immediately apparent

except to show that others, in addition to Levy, possessed stolen Unisonic stereos. In our opinion, the chance that this added data would have induced a jury not to convict Zali Fried was insignificant. It was proven by overwhelming evidence that the Unisonics found at Levy's loft were part of the stolen load of merchandise and that Zali Fried sold these Unisonics to Levy at $7.00 below the consignee's lowest selling price. The carton found outside Levy's loft was but a small piece of circumstantial evidence leading to the conviction which would have resulted, in our opinion, without it. As the Court of Appeals in affirming the conviction, remarked:

". . . when stereos with the same serial numbers as the missing units in 80 or 90 per cent of the cases, [82 of 85 in the Levy seizure; 5 of 6 in Beddo's case; and 20 of 22 with respect to Hendler] and cartons with the same numbers in several instances, are sold by a business that has never bought them, at a price a little lower then the usual wholesale price, and without the customary invoicing, the inference that can be drawn by a rational trier of fact is not very remote. To appellate judges who review records, it is difficult to see how any other inference could be drawn in this case." United States v. Fried and Brach, supra, 464 F.2d at 985.

We might also add that the witness Hendler testified that Zali Fried called him and offered him a "couple of dozen" stereos in Philadelphia, thus implicating her directly, and without any reference whatsoever to the one carton found outside Levy's JNL Discount Center.

5. Finally, the Government failed to turn over to defendant an affidavit from the Japanese manufacturer of the stolen Unisonic stereos regarding the serial numbers on the stereos. The Assistant United States Attorney has categorically denied the existence of any such document, even to this day. Additionally, the Assistant testified that Government files contain no exculpatory data.

For the above reasons, defendant Fried's motions are hereby denied and her bail continuance revoked. She is ordered to report to the United States Marshal on May 11, 1973, to commence serving her sentence.

This is an order.