Simon BRACH, Plaintiff-Appellant,

v.

UNITED STATES of America, Appellee.

No. 1183, Docket 76–2040.

United States Court of Appeals,
Second Circuit.

Argued June 18, 1976.

Decided Sept. 9, 1976.

Steven H. Thal, New York City (Thal & Youtt, New York City, of counsel), for plaintiff-appellant.

Bernard J. Fried, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., and Paul R. Bergman, Asst. U. S. Atty., Eastern District of New York Brooklyn, N. Y., of counsel), for appellee.

Before MANSFIELD, OAKES and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Simon Brach appeals from an unreported decision of the District Court for the Eastern District of New York, Hon. John R. Bartels, denying a motion under 28 U.S.C. § 2255 to vacate his sentence and conviction because of alleged prosecutorial suppression of critical evidence and information.

On March 3, 1972 appellant and his mother, Zali Fried, were convicted after a jury trial in the District Court, of possession and sale of stolen Japanese Unisonic brand stereos in violation of 18 U.S.C. § 659 and § 2315. The convictions were affirmed by this court. *United States v. Fried and Brach*, 464 F.2d 983 (2d Cir.), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 554, 34 L.Ed.2d 511 (1972) ("Fried I").

Zali Fried then moved, on her own behalf, for a new trial pursuant to Rule 33, F.R. Crim.P., alleging that the prosecution had suppressed several pieces of material information. After an evidentiary hearing, the District Court denied the motion. *United States v. Fried*, 359 F.Supp. 227 (E.D.N.Y. 1973). On appeal this court reversed the denial of the motion on the "sale" count, but affirmed the denial of the "possession" count. *United States v. Fried*, 486 F.2d 201

(2d Cir.), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 759 (1974) ("Fried II"). The ground for reversal of the sale count was the negligent non-disclosure by the prosecutor of the fact that the Government's main witness—Joseph Levy—was then under federal indictment for possession of stolen goods. We found that the Government's case of unlawful sale of stolen goods rested almost entirely on the testimony of one witness, and it was clear that if the indictment against him for the receipt of other stolen goods had been revealed, his credibility would probably have suffered a severe blow. We held that the failure to disclose the fact of indictment to the defense entitled the defendant to a new trial. We refused to reverse on the "possession" count because illegal possession had been established by proof wholly independent of the witness Levy. Appellant did not join in this first new-trial motion by Fried and was not involved in the appeal therefrom which resulted in *Fried II, supra.*

Thereafter, on July 19, 1974, Fried moved again for a new trial pursuant to Rule 33, F.R.Crim.P. This second motion was based on a notarized letter from the Japanese manufacturer of the stolen stereos to the American importer which apologized for errors in the carton numbers in the shipping invoice. Fried claimed that this letter, the so-called "Japanese affidavit", was both "newly discovered" and "suppressed exculpatory" evidence and that she would clearly establish in a new trial that the stereos stolen from the pier could not be linked to those which had passed through her hands. This motion was denied by Judge Bartels. There was no appeal. Appellant Brach did not participate in this motion.

On July 3, 1975 Brach moved to vacate his sentence pursuant to 28 U.S.C. § 2255 and, as noted above, this was denied in an unreported decision on March 9, 1976. In this appeal from that decision appellant presses two main claims: (1) that the negligent non-disclosure by the prosecutor of the indictment of Levy, which in *Fried II* had resulted in the reversal of Fried's "sale" conviction, mandated that appellant Brach's

conviction on both the sale and possession counts be vacated; and (2) that the Japanese affidavit and other allegedly newly discovered evidence set forth in the two Fried new-trial motions indicate that the Government had failed to disclose material exculpatory evidence to the defendants and that this suppression requires a new trial. Appellant also asks that the District Court's denial of discovery to establish that the Government had the Japanese affidavit in its possession be reversed.

We hold these claims to be without merit, and affirm the District Court's denial of the § 2255 petition.

I

In *Fried II* the negligent failure by the prosecution to disclose that Levy was under indictment for receiving stolen goods was deemed sufficient to require reversal of Fried's conviction on the sale count because we believed "that there is a significant chance that the non-disclosed item, developed by skillful counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." *Fried II,* 486 F.2d at 203.

The Government suggests that the "significant chance" test we expressed in *Fried II* is no longer valid. It relies upon *United States v. Agurs,* —— U.S. ——, 96 S.Ct. 2392, 49 L.Ed.2d 342, decided June 24, 1976, after the oral argument of this appeal. *Agurs* involved the innocent suppression by the Government in a murder case in the District of Columbia of an unrequested criminal record of the decedent which indicated that he had pleaded guilty to assault and twice to charges of carrying a deadly weapon. The defense tendered was self-defense, and it was contended that the prior criminal record, concededly admissible, would have tended to show the decedent's aggressive character and would have been corroborative of the claim of self-defense. The Court of Appeals reversed the District Court's denial of a motion for a new trial. The Supreme Court reversed, stating that the Court of Appeals had "incorrectly interpreted the constitutional requirement of due process." *Id.* at ——, 96 S.Ct. at 2397.

■ There is no doubt that the thrust of the *Agurs* majority view is that the unqualified finding by the trial judge that the respondent was indeed guilty was enough to defeat the motion for a new trial. We find it unnecessary, however, to determine how far a rule that requires the raising of a reasonable doubt as a condition to granting a new trial would apply in a case where the credibility of a single prosecution witness was dispositive, a contention asserted by Brach to be the situation here. For we find on this appeal that, even applying the "significant chance" test as if this were a Rule 33 motion, the order denying a new trial should be affirmed.

Levy did not testify that Brach knew or admitted that the stereos had been stolen. In fact, Levy did not admit that he, himself, knew that they were stolen. The evidence of Levy pertained to the delivery of the stereos without a bill. As we noted on the original appeal, Brach did not deny delivery of the stolen stereos but "disclaims knowledge that the stereos he delivered to Levy had been stolen, suggesting that it was coincidence that he had Levy's 100 stereo units delivered in a truck driven by a part-time New York City policeman, who was 'moonlighting' for Brach's trucking business." *Fried I,* 464 F.2d at 984. As we said on the original appeal:

"Brach's knowledge that the Levy stereos had been stolen was also proven inferentially only, but it was proven—not merely because the goods his trucking concern delivered were stolen or by his relationship to his mother as a Fried Co. owner, but also by the unusual circumstances of his delivery of $5,000 worth of stereos without a bill or an invoice and by the use of a part-time police officer for delivery purposes, thereby removing Brach himself from the transportation of the stolen goods, although he was on hand at Levy's at the time of delivery." *Id.* at 985.

We also noted that Brach failed to offer any explanation for his possession of recently stolen goods. *Id.*

Thus, impeachment of Levy for a motive to lie would not have affected the essential corroboration of delivery by Brach, which he did not contest. . We must assume that if Brach had given Levy a bill of sale Brach would have kept a copy in the usual course of business and been able to produce it to rebut the presumption of recent possession. Nor would it have affected the inferences which led the jury to the conclusion that Brach knew that the goods were stolen. There was sufficient corroboration of appellant's activities in support of the conclusion that the stereos were stolen and that appellant knew it, to distinguish his case from Fried's, both on the "sale" and "possession" counts.

There were three witnesses who corroborated Levy's testimony concerning Brach's possession and delivery of the Unisonic stereos. The first and most important was Fred Mele, a New York City policeman, who "moonlighted" for two years on and off as a part-time truck driver for Brach. His corroboration of Levy's testimony was very specific and included the following: that a delivery to Levy was made at the very time Levy said it was; that the name on the delivery truck was "Eged Express"; that Brach was present at the delivery; that 50 cartons were delivered which were approximately the same size as the Unisonic cartons seized from Levy's storehouse; that although he did not know the particular contents, his deliveries for Brach were "mostly electronics, radios, phonographs, tape recorders"; and that Levy's brother helped him unload the cartons and Brach refrained from taking part in that operation as well as from being on the truck during the transfer of the merchandise.

The other corroborating witnesses to Brach's possession and delivery of the Unisonics were the Waterfront Commission Special Agent and the New York City Patrolman who testified that they seized Unisonics from Levy's warehouse loft and an empty Unisonic carton directly outside his door the day after the alleged Brach delivery. There was no evidence that Levy had other Unisonic stereos in his inventory.

Given these elements of corroboration, the presentation of the indictment of Levy as a basis for his impeachment would, in all likelihood, have been cumulative. The jury did not have to find Levy innocent to find Brach guilty. Levy must have been under grave suspicion by the jury. Because of his prior dealings with the Fried Trading Company, he would presumably have known that they did not carry the Unisonic brand stereo. Yet when Brach's stepfather, Mr. Fried, offered him this brand at below normal cost, Levy showed no hesitation in buying 100 stereo units when previously he had never bought more than 24 stereos in any one order and despite the fact that minutes earlier he had rejected an offer of different stereos from Fried because he had "quite a bit of merchandise" and did not need them. (Tr. 15) Then he accepted delivery of the 100 stereos without retaining a copy of the receipt and without a bill of sale. To make the picture complete, by the next day when the stereos were seized from Levy's warehouse, the outer cartons, which presumably identified the source and consignee, had been removed. There was no legitimate logical reason for removal while they were still in storage. Levy must, indeed, have been under deep suspicion by the jury as a fence, even without showing them his indictment for receiving stolen goods.[1]

## II

We also reject appellant's second claim that the so-called Japanese affidavit and other alleged newly discovered evidence requires a new trial.

The Japanese affidavit was sent to the president of the American importer over one year before Brach's trial. The president was called by Brach and the Friends as a defense witness to rebut the Govern-

---

[1] We did not consider the possibly cumulative effect of the indictment of Levy in *Fried I*, because there was literally no corroboration of Levy's conversation with Mrs. Fried. In the case of Brach, its possibly cumulative character is of some significance in assessing whether the omission was prejudicial.

**8**

ment's proof that the stereos which passed through their hands were stolen, for the same purpose that the Japanese affidavit is said to serve. It is not apparent why the affidavit could not have been discovered through the due diligence of Brach's trial counsel.

■ In any event, the existence of the Japanese affidavit was known within two years of final judgment, and a motion for a new trial based on newly discovered evidence "may be made only before or within two years after final judgment . . . ." Rule 33, F.R.Crim.P. If we felt that the affidavit was suppressed by the prosecution, we might be inclined to consider whether a new trial is required in the interest of justice by the collateral attack under the § 2255 application here presented. But we find no such imperative. As Judge Bartels noted below:

"In denying Zali Fried's second new trial motion, the Court found there was no basis for Zali Fried's allegations and that, there was no prosecutorial misconduct involved; nor has the petitioner Brach shown in this application that there was such confusion in stereo and carton numbers involving exculpatory facts of which the Government had knowledge but failed to turn over to the defendants."

No motion was made under Rule 33. Even if we felt we had the power to entertain a motion under § 2255 in these circumstances, we believe the doctrine of finality surely should preclude such consideration.

■ Even if we assume that the evidence could not have been discovered and a timely Rule 33 motion have been filed, the evidence is not "of such a character that it would produce a different verdict in the event of a retrial." *United States v. Kahn,* 472 F.2d 272, 287 (2d Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). At trial both Fried and Brach had "attempted to show that there was a significant discrepancy between the serial and carton numbers of the stolen radios and those allegedly possessed by them." Appellant's Brief at 19. This attempt was unsuccessful. The Government had provided evi-

dence to show that the method of identifying the stolen stereos was accurate. The chief of security for the pier where the theft occurred testified that the shipment of stereos had been kept separate within one crib and that most of the remaining cartons fell within the range of carton numbers set forth in the bill of lading. This testimony tended to confirm the accuracy of the original bill of lading.

Once again we are not required to decide whether § 2255 can be invoked where the issue raised is neither jurisdictional nor constitutional nor one specifically involving interpretation of "the laws of the United States." *See Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); *United States v. Franzese,* 525 F.2d 27, 31 n.7 (2d Cir. 1975).

The denial of the petition under 28 U.S.C. § 2255 is affirmed.