**UNITED STATES of America**

v.

**James E. CORR, III, Defendant.**

**No. 77 Civ. 2642.**

United States District Court,
S. D. New York.

June 23, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the U. S., Richard Weinberg, Asst. U. S. Atty., New York City, of counsel.

Frederick H. Cohn, New York City, for defendant.

EDWARD WEINFELD, District Judge.

After a six-week jury trial, James E. Corr, III, the petitioner, was convicted of conspiracy to violate the securities and mail fraud laws; of the sale of unregistered securities of Jerome Mackey Judo, Inc. ("Judo"); of securities and mail fraud; of making false statements on a bank loan application; of perjury before a grand jury, and of making false statements before the Securities and Exchange Commission ("SEC" or "Commission"). He was sentenced to concurrent terms of imprisonment of two and one half years and fined $10,000. The judgments of conviction were unanimously affirmed.[1]

He now moves (1) pursuant to 28 U.S.C., section 2255, to set aside his conviction and for a new trial upon a claim of conflict of interest of his attorney with respect to a witness called by the government; and (2) pursuant to 28 U.S.C., sections 144[2] and

1. *United States v. Corr*, 543 F.2d 1042 (2d Cir. 1976).

2. Section 144 reads:
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

455(a) and (b),[3] that this Court recuse itself from considering his motion for a new trial.

We necessarily first consider the motion to recuse. This is predicated essentially upon the fact that this Court had suggested during Corr's trial that the testimony of Peter Davis, an attorney, be stipulated. Davis and Howard Bergtraum were partners in a law firm that represented Judo. Corr testified that Davis had told him he was not a control person of Judo, that Bergtraum never told him he was a control person, and that he had been advised that his sales of Judo shares would thus be legally permissible. This testimony was relevant to counts 2 through 9, which charged Corr with the sale of unregistered Judo stock. In rebuttal, the government called Bergtraum, who categorically denied Corr's testimony. Bergtraum testified that at no time during 1972 did Corr tell him he was selling Judo securities; that neither he nor any other member of his firm in his presence had told Corr that it would be legally permissible for him to sell Judo shares; and that in fact he told Corr that he was a control person. Bergtraum, a former SEC attorney, was vigorously cross-examined by Michael Lesch, defendant's trial counsel. The cross-examination brought out the fact that Bergtraum might possibly face disbarment from practice before the Commission or other disciplinary action if, aware that Corr was a control person, Bergtraum had told Corr that he could sell Judo shares or, having knowledge that Corr was selling such shares, he had failed to advise the SEC of that fact.

The prosecution then announced as its last witness Davis, whereupon Lesch requested a robing room conference. In that conference, Lesch stated that about a week or two before the Corr trial commenced he had learned that Milton Gould, his partner, was representing Davis in a disciplinary or injunction matter then pending before the SEC and that Davis apparently had other difficulties relating to advice Davis had given to his clients. Lesch further stated that the government's unexpected calling of Davis put him in the position of cross-examining him—a conflict that he had not anticipated, since it previously had been decided not to call Davis as a defense witness. Lesch also stated that he had never met Davis personally and until that moment was unaware that Davis would be a witness. The prosecutor then announced that Davis had signed a consent judgment with the SEC in a matter entirely unrelated to Judo, but questioned whether any cross-examination for impeachment purposes could be based on the injunction. The prosecutor said he intended to limit Davis' testimony solely to the matters as to which he had questioned Bergtraum. Since it appeared that the sole purpose in calling Davis as a witness was to deny Corr's testimony as to these matters, as Bergtraum already had, the Court suggested consideration be given to a stipulation that if Davis were called, he would testify substantially as Bergtraum did on direct and on cross-examination. The suggestion was accepted by both counsel, and upon the return to the courtroom the stipulation was read to the jury in Corr's presence. Thereupon the prosecution rested.

[1] The basis of the instant motion, in the words of the petitioner is that " . . . the role played by Judge Weinfeld . . . during the in-chamber proceedings at [the] trial, as well as comments made by him at [the] bail hearing on January 4, 1977 . . . ." require recusal. To warrant recusal under either section 455(b)(1) or 144, the alleged bias must be "personal" and

---

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . .

**3.** The relevant provisions of 28 U.S.C. § 455 read:

 (a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which

his impartiality might reasonably be questioned.

 (b) He shall also disqualify himself in the following circumstances:

 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

"stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."[4]

Accepting for the purpose of this motion the accuracy of Corr's affidavit, the fact that this Court, in an obvious effort to conclude an already unduly protracted trial, suggested the stipulation, and the fact that Corr's lawyer as well as the prosecution agreed thereto, in no respect establishes personal bias or prejudice against the petitioner. The suggestion, which the parties were free to reject, was made during the course of the trial. The terms of the stipulation which were then read in open court were placed on the record in the petitioner's presence. With respect to the Court's role as to the stipulation, the charge of personal bias or prejudice is clearly without substance or support; indeed, one could plausibly argue that it showed favor to Corr since it attenuated the force of live testimony that Davis would have given, which would have corroborated that of Bergtraum. The testimony of a live witness is generally acknowledged to be more potent than that read from a deposition or stipulation.

The petitioner makes a further claim for recusal, as noted above, based upon comments made during a hearing on his application for bail pending his new counsel's preparation of the motion for a new trial. During the course of argument, this Court observed that even if the petitioner's claim with respect to conflict of interest were to be sustained, any alleged prejudice could affect only counts 2 through 9, relating to the sale of unregistered Judo securities; and that Davis' testimony was not material to the many other substantive counts charging securities fraud, perjury, a false bank loan application and false testimony. The Court also commented that its recollection was that petitioner played an active role during the trial and at times seemed to be advising his lawyer on how to conduct his defense. Indeed, the Court made reference thereto during the trial. Just what the claim of alleged bias or prejudice is with respect to these matters is not clearly articulated. In any event, the contention that the observations by the Court during the course of argument on the motion for bail require its recusal for personal bias or prejudice is fatuous. So, too, that the Court denied the petitioner's motion for bail pending his new counsel's review of the voluminous trial record falls far short of meeting the standard required to establish personal bias or prejudice. The matters underlying the claimed prejudice occurred during the trial or on petitioner's motion for bail following his conviction, and by no stretch of the imagination can they be deemed "extrajudicial" or indicative of personal bias or prejudice against the defendant.

Nor has the petitioner established any basis for recusal under new section 455(a) on the ground that the Court's "impartiality might be reasonably questioned." While our Court of Appeals has recently recognized that this provision was designed to negate the "duty to sit" concept,[5] and allows a judge "a greater flexibility in determining whether disqualification is warranted in particular situations,"[6] nothing has been presented to warrant such disqualification.

Disqualification under section 455(a) must rest upon a factual basis. The test under that provision is not the subjective belief of the defendant or that of the judge, but whether facts have been presented that, assuming their truth, would lead a reasonable person reasonably to infer that bias or prejudice existed, thereby foreclos-

4. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. Wolfson*, 558 F.2d 59, 62 (2d Cir. 1977).

5. *See Rosen v. Sugarman*, 357 F.2d 794, 797–98 (2d Cir. 1966); *see also Wolfson v. Palmieri*, 396 F.2d 121, 124–25 (2d Cir. 1968).

6. *United States v. Wolfson*, 558 F.2d 59, 63 (2d Cir. 1977).

ing impartiality of judgment.[7] The claim must be supported by facts which would raise a reasonable inference of lack of impartiality on the part of the judge in the context of the issues presented for his consideration. Indeed, Congress specifically noted that the then proposed section 455(a) should not "be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial."[8] Here petitioner, in support of his motion, simply asserts his belief that the Court "no longer possesses a dispassionate view of the facts" because it was the "motivating force behind the stipulation" and because, in petitioner's view, the Court has "formed an opinion of [his] credibility and veracity."

■ The fact of the stipulation and the circumstances under which it was entered into are not in dispute. The determination of the issues presented by defendant's motion for a new trial requires familiarity not only with events leading to the stipulation as to Davis' testimony, but also with the trial transcript of over 5000 pages, hundreds of exhibits, the substance of the testimony of witnesses in relationship to the

charges specified in the indictment, and the files and records of the case.[9] To grant petitioner's application upon the claims here advanced would mean that a defendant has it within his power to disqualify a court from passing upon his motion for a new trial whenever, without relevant evidential support, he expresses his subjective belief that the court did not have a "dispassionate view" of the facts. "[T]he feelings of defendants which, of necessity, must be subjective, cannot without more be made the test."[10]

The motion for recusal is accordingly denied.

■ We next consider the motion for a new trial, which, as already noted, centers about the stipulation as to Peter Davis' testimony. The petitioner asserts he did not know during his trial that his trial lawyer's firm also represented Davis in the matter then pending before the SEC. He claims that Lesch never advised him of a conflict of interest; that he first learned of this when his present counsel, after the affirmance of his conviction, combed the trial record. For the purpose of this motion the Court again assumes the verity of the defendant's assertions.[11] Petitioner con-

---

7. See United States v. Cowden, 545 F.2d 257, 265 (1st Cir. 1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); Parrish v. Board of Commissioners of Alabama State Bar, 524 F.2d 98, 100 (5th Cir. 1975). Whether the standard to be applied requires that the facts convince a reasonable person that *bias actually* exists or requires that a reasonable person could reasonably *believe bias to exist,* the claim here fails. See Parrish, supra at 104 (Brown, C. J., concurring).

8. H.R.Rep. No. 1453, 93d Cong., 2d Sess. (1974), *reproduced in* U.S.Code Cong. & Admin.News 6355 (1974).

9. Cf. United States v. Agurs, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

10. Wolfson v. Palmieri, 396 F.2d 121, 125 (2d Cir. 1968).

11. Consequently this Court has not considered Lesch's affidavit, submitted by him "with regret." However, since Lesch, who as the Court noted at one point during the trial had "done an excellent job" and had valiantly sought over

a 6-week period to stem the flood of testimony offered by more than 40 witnesses, is now charged with failure to protect petitioner's interests and with unethical conduct, simple fairness requires that the contents of Lesch's affidavit be noted on the record, even though not considered relevant on this motion. Lesch swears that before the trial and as soon as he learned that two of his partners represented Davis, he so advised Corr and also advised him that a potential conflict of interest existed because Davis might be called by the government. He further informed Corr that both Bergtraum and Davis denied advising Corr that he was not a control person and claimed to the contrary; that a review of the Davis files failed to disclose any support for Corr's position, and accordingly that it was decided not to call Davis or Bergtraum as defense witnesses. Lesch also swears that he "fully explained to Mr. Corr that I did not want to cross-examine Mr. Davis because he was a client of my firm and that I also told Mr. Corr that I believed it was in his best interests to stipulate to Davis' testimony because I did not think I would be able to improve on my cross-examination of Mr.

tends that Lesch's "malfeasance" in entering into the stipulation, thereby foreclosing a live cross-examination of Davis, deprived him of a fundamentally fair trial and of the effective representation of counsel, thus tainting his conviction on all counts. The prosecution also is charged with dereliction of duty under *Brady v. Maryland*,[12] in failing to disclose during the trial that Davis was then a target of a criminal investigation.

 In order to prevail on this motion, the petitioner must establish some specific prejudice resulting from the asserted conflict of interest.[13] Moreover, with respect to the *Brady* claim, the mere possibility that some item of undisclosed information or evidence might have been of some value to the defense does not by itself establish that it is material in a constitutional sense so as to require that the judgment of conviction be vacated.[14] Whatever differences or nuances that may have existed as to the standard of materiality to be applied in particular situations[15] have been set at rest by a recent ruling of the Supreme Court in *United States v. Agurs*,[16] "the thrust of [which] is that, in the context of the entire record the omitted evidence must raise a substantial doubt as to the defendant's guilt."[17]

To put the matter in proper focus, it should be noted at the outset that we are not dealing with direct exculpatory evidence. Davis' testimony would not have tended to exculpate Corr; to the contrary, it would have been inculpatory and contradictory of Corr's testimony that he had been told he was not a control person. Rather, petitioner's basic claim that he was deprived of a fair trial and effective counsel centers about Davis' nonappearance on the witness stand, as a result of which he was not subjected to cross-examination. The argument runs that had Davis testified orally, skillful cross-examination by an uninhibited and informed attorney would have enabled him to argue persuasively to the jury that both Davis and Bergtraum were lying in their own self interest to protect their legal positions and that Corr was telling the truth when he testified that they had informed him he was not a control person. The essential premise of this contention is that the Court would have permitted, and that the defendant was entitled to, a cross-examination of Corr for impeachment purposes with respect to the SEC consent decree, which contained a provision that Davis neither admitted nor denied the SEC's allegations. Further, the argument proceeds on the premise that Corr was also entitled to an extensive cross-examination with respect to the underlying facts of a still ongoing investigation by the Securities and Exchange Commission[18] and other authorities in a matter unrelated to Judo

Bergtraum, because I viewed Davis as potentially more harmful to Corr than Bergtraum and because, in my view, the jury would discount the testimony's importance if we were willing to stipulate to it."

12. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

13. *Abraham v. United States*, 549 F.2d 236, 239 (2d Cir. 1977); *United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976).

14. *Cf. United States v. Agurs*, 427 U.S. 97, 110–11, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Sposato*, 446 F.2d 779, 781 (2d Cir. 1971).

15. *See United States v. Agurs*, 427 U.S. 97, 107–14, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and cases cited therein; *see also United States v. Keogh*, 417 F.2d 885, 887–90 (2d Cir. 1969); *United States v. Miller*, 411 F.2d 825, 830, 832 (2d Cir. 1969).

16. 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

17. *United States v. Stassi*, 544 F.2d 579, 584 (2d Cir. 1976); *see also Brach v. United States*, 542 F.2d 4, 6 (2d Cir. 1976) ("[t]he thrust of the *Agurs* majority view is that the unqualified finding by the trial judge that the respondent was indeed guilty was enough to defeat the motion for a new trial").

18. *See* Fed.R.Evid. 608, 609; *cf. Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case").

stock. The thrust of such an examination would have attempted to establish that Davis' testimony was calculated to curry favor with governmental agencies and thereby ward off an indictment [19]—incidentally, an indictment which was not returned until almost ten months after Corr's conviction and one month after its affirmance.[20]

Assuming, only arguendo, that this Court would have permitted at the very end of a long trial such a free-roving cross-examination of Davis for impeachment purposes,[21] and assuming further, as his present counsel envisions, a most raking cross-examination with the skill of the redoubtable Max D. Steuer, we must evaluate its impact upon the jury in the context of the entire record. First, the question of control of Judo stock was material only to the second through ninth counts. Next, substantive evidence of the fact of Corr's control was given by other witnesses in the government's case in chief. Thus the case as to those eight counts relating to the sale of unregistered stock, rested upon hard evidence entirely independent of any controversy over what Corr was or was not told by Davis and Bergtraum, who were called in rebuttal only because of Corr's testimony. Third, these matters, when evaluated in the context of the entire case, pale into relative insignificance. The indictment charges included conspiracy to violate the securities and mail fraud laws; substantive charges of securities and mail fraud in the sale and distribution of Judo stock; false statements on a bank loan application; perjury before a grand jury; and making false statements before the SEC on six separate occasions. More than forty witnesses, including codefendants who pled guilty, others named as conspirators but not indicted, and third parties testified in support of the

various charges; hundreds of exhibits were received in evidence. The most blistering cross-examination of Davis by skillful counsel would not have destroyed nor impaired in the slightest degree the force of the devastating testimony of the government's witnesses. The fact is that counsel not only thoroughly cross-examined Bergtraum, as noted above, but in his summation attacked both Bergtraum and Davis and argued to the jury that they, as well as other witnesses, testified falsely in their own interest.

Against the background of the "actualities of a long trial" [22] as it unfolded from day to day, witness to witness, and upon the totality of the entire record, this Court is satisfied to a moral certainty that had the stipulation not been entered into, and had Davis been extensively cross-examined in an attack upon his credibility, it would not have raised a reasonable doubt in the mind of a single juror as to any count in the indictment. So, too, the Court is persuaded not only beyond a reasonable doubt, but beyond peradventure of doubt, of the defendant's guilt on all counts.

The motion to vacate the judgment of conviction is accordingly denied.

---

**19.** *Cf. United States v. Fried,* 486 F.2d 201, 202 (2d Cir. 1973), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 759 (1974).

**20.** The indictment was recently dismissed by Judge Haight. *United States v. Fields,* 76 Cr. 1022 (S.D.N.Y.1977).

**21.** During the trial the Court upheld an objection by the prosecution when Lesch, in cross-examining Chajet, a defendant called as a government witness, sought to question whether he was under investigation by the SEC. Trial Tr. at 1267–68.

**22.** *Glasser v. United States,* 315 U.S. 60, 88, 62 S.Ct. 457, 86 L.Ed. 680 (1942) (Frankfurter, J., concurring).